## BOOSTER LODGE NO. 405, INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, AFL–CIO v. NATIONAL LABOR RELATIONS BOARD ET AL.

No. 71–1417.   Argued March 26, 1973—Decided May 21, 1973

*Bernard Dunau* argued the cause for petitioner.   With him on the briefs were *Plato E. Papps, Louis P. Poulton,* and *C. Paul Barker.*

*Norton J. Come* argued the cause for respondent National Labor Relations Board.   With him on the brief were *Solicitor General Griswold, Harriet S. Shapiro, Peter G. Nash, John S. Irving,* and *Patrick Hardin. Samuel Lang* argued the cause for respondent Boeing Co. With him on the brief were *C. Dale Stout* and *Frederick A. Kullman.**

---

*J. Albert Woll, Laurence Gold,* and *Thomas E. Harris* filed a brief for the American Federation of Labor and Congress of Industrial Organizations as *amicus curiae* urging reversal.

*Milton Smith, Gerard C. Smetana,* and *Jerry Kronenberg* filed a brief for the Chamber of Commerce of the United States as *amicus curiae* urging affirmance.

PER CURIAM.

In this companion case to *NLRB* v. *Boeing Co., ante,* p. 67, we must decide whether our decision in *NLRB* v. *Textile Workers,* 409 U. S. 213, authorizes the Board to find that a union commits an unfair labor practice in seeking court enforcement of fines imposed for strike-breaking activities by employees who have resigned from the union, even though the union constitution expressly prohibits members from strikebreaking. We hold that it does.

On September 16, 1965, the day after the expiration of the collective-bargaining agreement between Booster Lodge No. 405, International Association of Machinists and Aerospace Workers, AFL–CIO (the Union), and the Boeing Co. (the Company), the Union called a lawful strike and picketed the Company's Michoud, Louisiana, plant to further its demands for a new contract. The strike continued for 18 days, during which time 143 of the 1,900 production and maintenance employees represented by the Union crossed the picket line to work. All of these employees had been members of the Union before the strike,[1] but 61 resigned their membership prior to returning to work and another 58 resigned after they returned to work.[2] These resignations were tendered in registered or certified letters to the Union. Neither its constitution nor its bylaws con-

---

[1] The expired collective agreement contained a maintenance-of-membership provision that required new employees, as a condition of continued employment, to become members of the Union unless they notified both the Union and the Company within 40 days of accepting employment that they did not wish to join. Further, Union members were required to maintain their membership during the life of the contract.

[2] The remaining employees who returned to work during the strike did not resign from the Union.

tained any provision expressly permitting or forbidding such resignations.

The strike ended on October 4, 1965, after ratification of a new collective-bargaining agreement by the Union membership. During late October and early November, the Union notified all employees who had crossed the picket line to work during the strike that charges had been preferred against them under the Union constitution for "Improper Conduct of a Member" because of their having "accept[ed] employment . . . in an establishment where a strike or lockout exist[ed]." They were advised of the dates of their Union trials, which were to be held even in their absence, and of their right to be represented by any counsel who was a member of the International Union. Fines were imposed on all employees who had worked during the strike without regard to whether or not such employees had resigned or had remained members.[3] None of the disciplined employees processed intra-union appeals. To the extent that fines were not paid,[4] the Union sent written notices to the offending employees stating that the matter had been referred to an attorney for collection. Suits were initiated in state court against nine employees for the purpose of collecting the fines plus attorneys' fees and interest. None of these suits has been resolved.

The Company filed an unfair labor practice charge with the National Labor Relations Board alleging that the Union had violated § 8 (b)(1)(A) of the National Labor Relations Act, 61 Stat. 141, 29 U. S. C. § 158 (b)

---

[3] A standard fine of $450 was imposed on each of the disciplined employees. The amount was reduced, however, for those few members who appeared at their hearings, apologized for their actions, and pledged loyalty to the Union.

[4] None of the $450 fines has been paid, but reduced fines have been paid in a few instances.

(1)(A).[5]   The General Counsel issued a complaint, and the Board held that the Union violated § 8(b)(1)(A), by fining those employees who had resigned from the Union before returning to work during the strike, and by fining those who had resigned after returning to work to the extent that such fines were based on post-resignation work. No violation was found in the Union's fining members for crossing the picket line to work during the strike or in its fining those employees who resigned after they returned to work for work performed prior to resignation. The Board ordered the Union to cease and desist from fining employees who had resigned from the Union for their post-resignation work during the strike and from seeking court enforcement of such fines.   It further ordered reimbursement to employees who had already paid fines for any amount imposed because of post-resignation work.   The Court of Appeals sustained these holdings, 148 U. S. App. D. C. 119, 459 F. 2d 1143 (1972), and, on the Union's petition for review, we granted certiorari. 409 U. S. 1074.

In *NLRB* v. *Textile Workers*, 409 U. S., at 217, we held that "[w]here  a member lawfully resigns from a union and thereafter engages in conduct which the union rule proscribes, the union commits an unfair labor practice when it seeks enforcement of fines for that conduct." Since in that case there was no provision in the Union's constitution or bylaws limiting the circumstances in which a member could resign, we concluded that the members

---

[5] Section 8 (b)(1)(A) of the Act provides, in relevant part:

"It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7: *Provided,* That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein . . . ."

were free to resign at will and that § 7 of the Act, 29 U. S. C. § 157,[6] protected that right to return to work during a strike which had been commenced while they were union members.[7] The Union's imposition of court-collectible fines against the former members for such work was, therefore, held to violate § 8 (b)(1)(A).

Here, as in *Textile Workers,* the Union's constitution and bylaws are silent on the subject of voluntary resignation from the Union.[8] And here, as there, we leave open the question of the extent to which contractual restriction on a member's right to resign may be limited by the Act. Since there is no evidence that the employees here either knew of or had consented to any limitation on their right to resign, we need "only to apply the law which normally is reflected in our free institutions—the right of the individual to join or to resign from associations, as he sees fit 'subject of course to any financial obligations due and owing' the group with which he was associated." *Textile Workers, supra,* at 216.

The Union contends, however, that a result different from *Textile Workers* is warranted in this case because,

---

[6] Section 7 of the Act provides, in relevant part:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities . . . ."

[7] It was stipulated in that case that all 31 of the employees who resigned from the Union during the strike and returned to work participated in the strike vote, and voted in favor of the strike. *NLRB* v. *Textile Workers,* 409 U. S. 213, 219 n. 2 (BLACKMUN, J., dissenting).

[8] Since the collective-bargaining agreement expired prior to the times of the resignations, the maintenance-of-membership clause therein was no impediment to resigning.

even though its constitution does not expressly restrict the right to resign during a strike, it does impose on members an obligation to refrain from strikebreaking. The Union asserts that this provision has been consistently interpreted to bind a member, notwithstanding his resignation, to abstain from strikebreaking for the duration of an existing strike. It urges that this provision may be enforced as a matter of contract law against one whose membership has ceased, because it was an obligation he undertook while a member.

The provision in the Union's constitution which proscribes strikebreaking by its terms purports only to define "misconduct of a member." Nothing in the record indicates that Union members were informed, prior to the bringing of the charges that were the basis of this action, that the provision was interpreted as imposing any obligation on a resignee.[9] Thus, in order to sustain the Union's position, we would first have to find, contrary to the determination of the Board and of the Court of Appeals, that the Union constitution by implication extended its sanctions to nonmembers, and then further conclude that such sanctions were consistent with the Act. But we are no more disposed to find an implied post-resignation commitment from the strikebreaking proscription in the Union's constitution here than we were to find it from the employees' participation in the strike vote and ratification of penalties in *Textile*

---

[9] The Union points out in its brief that at the 1972 International Union convention its interpretation of the strikebreaking proscription was made explicit. This constitutional amendment, made seven years after the strike here, is persuasive evidence that it was not there before, or at a minimum, that the proscription then existing did not apprise the employees of their asserted obligations to the Union.

*Workers.*[10]  Accordingly, the judgment of the Court of Appeals sustaining the Board's finding of an unfair labor practice on the part of petitioner Union is

*Affirmed.*

MR. JUSTICE BLACKMUN, concurring in the judgment.

In *NLRB* v. *Textile Workers*, 409 U. S. 213 (1972), the strikebreaking employees, while they were members of the union, had all voted to strike.  On the day following the inception of the strike, these employees also voted in favor of a union resolution that anyone aiding or abetting the company during the strike would be subject to a fine.*  And all had participated in the strike prior to resigning from the union.

I was in solitary dissent in *Textile Workers, id.,* at 218.  I emphasized there that "it seems likely that the three factors of a member's strike vote, his ratification of strikebreaking penalties, and his actual participation in the strike, would be far more reliable indicia of his obligation to the union and its members than the presence of boilerplate provisions in a union's constitution," *id.,* at 220; that the Court's opinion seemed to me "to exalt the formality of resignation over the substance of the various interests and national labor policies that [were] at stake," *id.,* at 221; that § 7 of the National Labor Relations Act "does not necessarily give him ¦[the employee] the right to abandon these [union] activities

---

[10] In its reply brief, the Union argues that in *Textile Workers* there was no limiting rule on post-resignation return to work during the course of the strike, but that in this case, the Union constitution proscribed such conduct.  In *Textile Workers*, however, there was a duly enacted rule prohibiting any member from aiding and abetting the employer during the strike and subjecting violators to a $2,000 fine.  On its face, the constitutional proscription here advanced is no broader than that rule.

*See 409 U. S., at 218–219, nn. 1 and 2.

in midcourse once he has undertaken them voluntarily," *id.*, at 222, quoting from 446 F. 2d 369, 373; and that the policy of § 7 would not be frustrated by a holding that an employee, in the circumstances of that case, could "knowingly waive his § 7 right to resign from the union and to return to work without sanction." 409 U. S., at 222–223.

The present case, however, is a very different situation. None of the Boeing employees who resigned from the Union had been given notice of a strikebreaking penalty before the strike vote or before their participation in the strike. The imposition of a penalty was never ratified formally by the union membership. The members were not notified that post-resignation strikebreaking was proscribed and would subject them to union discipline. And the provision in the Union's constitution, referred to by the Court, *ante,* at 89, as to a member's general obligation to refrain from strikebreaking, surely does not make up for this lack of notice, and it would not do so even if it were clearly applicable, which it is not, to strikebreaking after resignation from the Union.

Without effective notice of obligations that are supposed to be assumed, there can be no waiver of a member's § 7 right to refrain from participation in a legal strike. In the absence of such notice, § 8 (b)(1)(A) bars the union from subjecting a member to a choice between the substantial obligation of weathering the strike and that of being subjected to court-collectible fines for failure to do so.

I, therefore, join in the Court's judgment.