NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

DISTRICT LODGE NO. 99 and Lodge No. 2139, both Affiliated with International Association of Machinists and Aerospace Workers, AFL–CIO, Respondent.

No. 73–1192.

United States Court of Appeals, First Circuit.

Heard Dec. 4, 1973.

Decided Jan. 3, 1974.

William R. Stewart, Atty. with whom Peter G. Nash, Gen. Coun., John S. Irving, Deputy Gen. Coun., Patrick Hardin, Associate Gen. Coun., Elliott Moore, Deputy Associate Gen. Coun., and John D. Burgoyne, Atty., Washington, D. C., were on brief, for petitioner.

Bernard Dunau, Washington, D. C., with whom Plato E. Papps, Louis P. Poulton, Washington, D. C., and Edward C. Dalton, Jr., Falmouth, Me., were on brief, for respondent.

Before COFFIN, Chief Judge, ALDRICH and McENTEE, Circuit Judges.

COFFIN, Chief Judge.

In this action, brought pursuant to § 10(e) of the National Labor Relations Act, 29 U.S.C. § 141 et seq. (the Act), the National Labor Relations Board seeks enforcement of its order issued January 11, 1972, 194 N.L.R.B. 938, against District Lodge No. 2139 (the union), affiliated with the International Association of Machinists and Aerospace Workers, AFL-CIO (IAM), requiring the union to cease and desist from coercing employees in the exercise of their § 7 rights, and to take certain affirmative steps to eliminate specific unfair labor practices.*

When the plant-wide contract between the union and the employer expired on October, 26, 1969, the union called a strike in support of its demands for a new contract. During the strike, five members of the union notified the union that they were resigning, and thereupon crossed the picket line and returned to work. Several weeks later, the union's disciplinary committee found these five employees guilty of violating a provision in the IAM's constitution, prohibiting members from accepting employment in an establishment against which a lawful strike was in progress, and, *inter alia*, "suspended" them "from any and all Union activities for a period of five (5) years." The Board accepted the conclusion of the Administrative Law Judge that the union violated § 8(b)(1)(A) of the Act "by barring employees from membership in the Local for a period of five years." Thus, the question before us is: may a union bar membership to employees who have engaged in strikebreaking after having resigned from the union?

Preliminarily, we note that, although the issue was not addressed by the Administrative Law Judge or by the Board in its original disposition, in its brief the Board distinguished between the "suspension" of a member from union activities, as in the present case, and the

---

* Subsequent to the Supreme Court's decision in *Booster Lodge, infra,* the union informed the Board that it would comply with that part of the Order which was addressed to the imposition of court-collectible fines against employees for engaging in post-resignation strikebreaking. The union also decided to dismiss its suit against certain other employees for preresignation strikebreaking, and against members who engaged in strikebreaking without having resigned.

"expulsion" of a member from the union. The former act, according to the Board, implies that the union still has power over the wayward member, and is therefore an unfair labor practice. The act of expulsion, however, merely ratifies the former member's severing of his relationship with the union and, according to the Board, would be permissible under the Board's recent decision in Pattern Makers Association (Lietzau Pattern Company), 199 N.L.R.B. 14 (1972). Yet because the Board made no such distinction in its disposition of the present case, finding simply that the union had barred the employees from membership, it would seem that *Lietzau Pattern Company* would control. We need not rely exclusively upon *Lietzau*, however, because we think that the policy of allowing a union to control access to its membership is central to the relationship between the union and all employees.

Several recent Supreme Court decisions have exposed the delicate relationship existing between § 7 of the Act, protecting the right of employees to "refrain from" concerted activities, and the proviso of § 8(b)(1)(A), preserving the right of a union "to prescribe its own rules with respect to the acquisition or retention of membership therein." In N.L.R.B. v. Allis-Chalmers Manufacturing Company, 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967), the Court held that the union did not commit an unfair labor practice in fining its members who violated a union rule by working during an authorized strike, and seeking court enforcement of the fine. Yet in N.L.R.B. v. Granite State Joint Board, 409 U.S. 213, 93 S.Ct. 385, 34 L. Ed.2d 422 (1972) and Booster Lodge No. 405, I.A.M. v. N.L.R.B., 412 U.S. 84, 93 S.Ct. 1961, 36 L.Ed.2d 764 (1973), the Court held that the union committed an unfair labor practice in seeking court enforcement of a fine against an employee who lawfully resigned from the union before crossing the picket line. It would seem, therefore, that as to judicial enforcement of a union penalty, the Court has adhered to a contract approach, viewing the act of resignation as a termination of the relationship between the union and the employee and an end to the union's court enforced power over the employee. "[W]hen there is a lawful dissolution of a union-member relation, the union has no more control over the former member than it has over the man in the street." N.L. R.B. v. Granite State, *supra*, 409 U.S. at 217, 93 S.Ct. at 387.

In the present case, however, the union sought to penalize its former members, not by way of a court enforced penalty, but, rather, by debarment from the union itself. We hold that this was not an unfair labor practice. Clearly, the proviso of § 8(b)(1)(A) extends union control even over "the man in the street" to the extent that it preserves the union's right to prescribe rules for acquiring membership. N.L.R.B. v. Allis-Chalmers, *supra*, 388 U.S. at 198, 87 S.Ct. 2001 (White, J., concurring); Stone v. Local 29, Int'l Brotherhood of Boilermakers, 262 F.Supp. 961, 963 (D. Mass.1967). There are, of course, certain limits to a union's power to grant or withhold membership: a union cannot, for example, discriminate in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)–2(c)(1). Yet rarely have courts interfered in the internal membership policies of unions. At most, courts have simply refrained from enforcing union rules, or have prohibited employers from enforcing those rules, still allowing the union to enforce its rules under threat of expulsion from membership. It has been held that a union may expel a member for filing a decertification petition, Price v. N.L.R. B., 373 F.2d 443 (9th Cir. 1967), cert. denied 392 U.S. 904, 88 S.Ct. 2051, 20 L.Ed.2d 1363, although the union may not seek a court enforced fine against the same employee. And, in Local 1255, Int'l Association of Machinists and Aerospace Workers v. N.L.R.B., the Fifth Circuit held that a union may condition readmission to membership upon the payment of a disciplinary fine for

post-resignation strikebreaking, 456 F. 2d 1214, 1217 (5th Cir. 1972).

Thus, while § 7 may protect an employee from union control enforced by the courts or employers, the proviso of § 8(b)(1)(A) preserves a union's most basic power: that of granting or withholding membership. And it is this power which extends over employees, such as those in the present case, who have resigned from membership. Since, however, variations and subtleties may occur in this area, as for example, if the attempted resignation did not, or could not, comply with the union rules, we make it clear that we are deciding nothing but the bare question posed in the second paragraph of this opinion, without overtones.

That part of the Board's order prohibiting debarment of the strikebreaker-resigners from membership for a period of five years, and requiring notice to that effect, will not be enforced.