Jasen, J. (dissenting).
I concur in so much of the court’s opinion which holds that plaintiff, a radio commentator on public affairs, may be compelled to pay dues to AFTRA as a condition of his employment. However, I would hold that section 8 (subd. [a], par. [3]) of the National Labor Belations Act, insofar as it authorizes a commentator on public affairs to be required to join a labor organization and comply with its orders, as a condition of speaking oyer radio, violates the First Amendment.
The term “ membership in any labor organization ” in section 8 (subd. [a], par. [3]) has been interpreted narrowly to provide that any person is a member of a union and thus satisfies the condition of employment under a union shop agreement if that person tenders the customary initiation fees and dues to the labor organization. (Radio Officers v. Labor Bd., 347 U. S. 17; Labor Bd. v. General Motors, 373 U. S. 734.) “ ‘ Membership ’ as a condition of employment is whittled down to its financial core. ’ ’ (Labor Bd. v. General Motors, supra, at p. 742 [emphasis supplied].)
However, that is not to say that “ membership ” as a condition of employment is identical with “ membership ” as a description of the relationship between the labor organization and the employee. For example, in Labor Bd. v. General Motors {supra), the United States Supreme Court discussed the difference between an agency shop and a union shop. The agency shop arises from a union security agreement between an employer and a union whereby “ all employees are required as a condition of employment to pay dues to the union and pay the union’s initiation fee, but they need not actually become union members.” {Id., at p. 736.) On the other hand, under a union shop agreement, “ if the union chooses to extend membership even though the employee will meet only the minimum financial burden, and refuses to support or ‘ join ’ the union in any affirmative way, the employee may have to become a ‘ member ’ under a union shop contract, in the sense that the union may be able to *279 place him on its rolls. The agency shop arrangement * * * removes that choice from the union and places the option of membership in the employee ” {id., at pp. 743-744). Thus, where there is a union shop agreement, as here, the labor organization and not the employee has the “ option of membership ”.
This being so, it is relevant to inquire whether there is a constitutional infirmity in section 8 (subd. [a], par. [3]) as applied to persons, such as commentators on public affairs, whose First Amendment protection is of marked importance. Plaintiff contends that the element of union discipline as set forth in article XVIII of the AFTBA constitution[1] constitutes an unlawful and unreasonable prior restraint of his right to broadcast his commentary and analysis of the news. He argues that this provision authorizes the labor organization to discipline him for any “ act, omission or conduct * * * prejudicial to the welfare of the Association.” The chilling effect of this provision should be readily apparent. As a member of the labor organization, plaintiff is obligated to observe the orders issued by the organization. For example, in event of a strike, he would be ordered to refrain from crossing the picket line and thereby prevented from speaking on the radio as a commentator on public affairs. If he then chose to cross the picket line and violate his obligations as a union member, his conduct would undoubtedly be considered “ prejudicial to the welfare of the Association ”, thereby subjecting him to disciplinary sanctions, including a fine.[2]
AFTBA argues that there is no real danger inherent in the power of the union to fine plaintiff for violating a strike order since the United States Supreme Court has held that a union *280 member may avoid such fines by resigning from the union before returning to work. (Machinists & Aerospace Workers v. NLRB, 412 U. S. 84; NLRB v. Textile Workers, 409 U. S. 213.) In both of these decisions, it should be observed, the court was careful to point out that there were no restrictions on the union members’ right to resign from the union. (Machinists & Aerospace Workers v. NLRB, supra, at p. 88; NLRB v. Textile Workers, supra, at p. 216.) Indeed, the court implied that such a right to resign does not exist under a union shop agreement. (NLRB v. Textile Workers, supra, at p. 216, n. 4; at p. 219, n. 3; see, also, NLRB v. Mechanical & Allied Prod. Workers, Local 444, 427 F. 2d 883; Communications Workers v. NLRB, 215 F. 2d 835, 838-839.) Hence, plaintiff, broadcasting under a union shop agreement, is required to be a member of AFTRA, and, as such, is subject to all of the disciplinary sanctions to which members may be subjected.
In my view, the relationship between plaintiff, as a commentator on public affairs, and defendant, as a labor organization, imposed upon plaintiff under authority of section 8 (subd. [a], par. [3]) of the National Labor Relations Act, is constitutionally infirm. The very essence of plaintiff’s trade is the public discussion of matters of public interest or concern, an activity which has long been held to be pre-eminent among the various First Amendment rights. (Rosenbloom v. Metromedia, 403 U. S. 29, 43-44; Garrison v. Louisiana, 379 U. S. 64, 74; Thornhill v. Alabama, 310 U. S. 88, 101-102.) Such a commentator, whose First Amendment rights are of peculiar importance, is so specially situated as to have standing to claim freedom from interference with his right to freely comment on the news and public affairs. The threat of disciplinary sanctions, as stated before, constitutes an unlawful and unreasonable prior restraint of his right to broadcast his commentary and analysis of the news.
Nor may defendant successfully argue that the present action is not “ ripe ” for a declaratory judgment. Plaintiff has once refrained from broadcasting because of an AFTRA strike in 1967. The threat to plaintiff’s First Amendment rights is as close as the next union-industry dispute. In a situation such as this, where there is an uncertain and disputed jural relationship, a declaratory judgment has the practical effect of quieting or stabilizing that relationship and is particularly appropriate. *281 (See James v. Alderton Dock Yards, 256 N. Y. 298; Somberg v. Somberg, 263 N. Y. 1.) Plaintiff need not defy the union’s demands and suffer the consequences in order to obtain an adjudication of his rights. It is the purpose of a declaratory judgment to obtain a determination of a controversy before obligations are repudiated and rights invaded. (Post v. Metropolitan Cas. Ins. Co., 227 App. Div. 156, affd. 254 N. Y. 541.) If plaintiff were to wait until he suffered actual interference with his right to free speech, any court proceeding could only result in prospective relief and would be too late to remedy the immediate harm he would suffer. In short, a declaratory judgment should be available where resort to ordinary actions would not afford adequate relief. (Gaynor v. Rockefeller, 15 N Y 2d 120, 132.)
Accordingly, I would declare that section 8 (subd. [a], par. [3]) of the National Labor Relations Act is constitutionally infirm, insofar as it authorizes a prior restraint upon a person such as the plaintiff, a commentator on public affairs.
Chief Judge Breitel and Judges Jones, Wachtler and Rabin concur with Judges Stevens ; Judge Jasen dissents in part and votes to modify in a separate opinion in which Judge Gabrielli concurs.
Order affirmed.

. “ SECTION 1. Any member who shall be guilty of an act, omission, or conduct which in the opinion of the Board is prejudicial to the welfare of the Association, or of any of its Locals, or of any of its members, as such, or any member who shall fail to observe any of the requirements of the Constitution, or of any By-Laws, rules, regulations or orders lawfully issued by the Association, any Local or any duly authorized committee or agent of said Association or Local, or any member who shall in any way be indebted to the Association or any Local thereof, may, in the discretion of the Board, be either fined, censured, suspended or expelled from membership ”.

. AFTRA concedes in its brief that “ [a]n AFTRA member might * * * be subject to discipline enforced by fines * * * for such acts or omissions as crossing picket lines or failing to take part in a strike.”