### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### MACHINISTS LOCAL 1327, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL-CIO, DISTRICT LODGE 115, Respondent.

No. 77-3723.

United States Court of Appeals, Ninth Circuit.

Oct. 10, 1979.

---

DUNIWAY, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its order against the respondent Union. The Board's Decision and Order are reported at 231 N.L.R.B. 719 (1977). We decline to enforce the Board's order, and remand to the Board for further proceedings.

The facts were stipulated, and the case went directly to the full Board. It held, by a 3 to 2 vote, that the Union had violated § 8(b)(1)(A) of the National Labor Relations Act, 29 U.S.C. § 158(b)(1)(A) by fining three of its members who, during a strike, had resigned, crossed a picket line, and gone back to work.

The Board's condensed statement of the stipulated facts is as follows:

> Since approximately 1949 the Union has been the collective-bargaining representative of employees of Dalmo Victor, a division of Textron, Inc., ("the company"). About April 19, 1974, the Union called a meeting of its members and apprised them, including Company employees Hilda Hall, Viola Lapinski, and Polmyra Gomes, of an amendment to the Union's constitution that provided as follows (R. 21):

> *Improper Conduct of a Member:* . . . Accepting employment in any capacity in an establishment where a strike or lockout exists as recognized under this Constitution, without permission. Resignation shall not relieve a member of his obligation to refrain from accepting employment at the establishment for the duration of the strike or lockout or within 14 days preceding its commencement. Where observance of a primary picket line is required, resignation shall not relieve a member of his obligation to observe the primary picket line for its duration if the resignation occurs during the period that the picket line is maintained or within 14 days preceding its establishment.

Elliott Moore, N. L. R. B., Washington, D. C., on brief; Jesse Etelson, N. L. R. B., Washington, D. C., for petitioner.

Louis P. Poulton, Washington, D. C., on brief; Robert M. Simpson, Rose, Klein, Marias, Los Angeles, Cal., for respondent.

Before DUNIWAY and KENNEDY, Circuit Judges, and BONSAL,* District Judge.

* The Honorable Dudley B. Bonsal, Senior United States District Judge for the Southern District of New York, sitting by designation.

On June 3, 1974, the Union called another meeting to take a strike vote and again told its members, including Hall, Lapinski, and Gomes, that under the provision anyone crossing the picket line might be fined. On that same day the Union commenced an economic strike against the Company and established a picket line. (R. 22.)

Eight months later, on February 14, 1975, Hall and Lapinski submitted written resignations to the Union; they then returned to work, crossing the still-existing picket line on February 18. Gomes resigned from the Union on May 10, 1975; she then crossed the picket line [and returned to work] on May 12. On April 16, 1975, the Union fined Hall and Lapinski $2,277.50 each and on August 6, 1975 the Union fined Gomes $1,125 for working behind a picket line. (R. 22–23.) The fines are court-collectible. (R. 30).

The strike was still continuing when the stipulation was executed on January 27, 1976.

In holding that the Union's constitutional provision did not justify the discipline, the Board found that the provision did not purport to restrict the members' right to resign from the Union, but rather sought only to unlawfully regulate post-resignation conduct. The dissenting Board members would have found the provision to be a restriction upon the right to resign, rather than a restriction upon post-resignation conduct. We think that the Board's holding is hypertechnical, and that the dissenting Board members state and apply the law more accurately.

■ We begin with the power of a union to discipline its members for crossing its lawful picket line or returning to work during a strike. A union rule against that conduct is a legitimate internal regulation of the conduct of its members, and imposition of a fine on a member is lawful under § 8(b)(1)(A) of the Act, 29 U.S.C. § 158(b)(1)(A). *N. L. R. B. v. Allis-Chalmers Mfg. Co.,* 1967, 388 U.S. 175, 195, 87 S.Ct. 2001, 18 L.Ed.2d 1123. *See also N. L. R. B. v. Granite State Joint Board, Textile*

*Workers Union,* 1972, 409 U.S. 213, 215, 93 S.Ct. 385, 34 L.Ed.2d 422.

■ On the other hand, a union member has a right to resign from his union, protected by Section 7 of the Act, 29 U.S.C. § 157. *N. L. R. B. v. Martin A. Gleason, Inc.,* 2 Cir., 1976, 534 F.2d 466, 476. Moreover, when the member does resign, "when there is a lawful dissolution of a union-member relation, the union has no more control over the former member than it has over the man in the street." *Granite State, supra,* 409 U.S. at 217, 93 S.Ct. at 387. To the same effect, see *Booster Lodge No. 405, Int'l Ass'n of Machinists v. N. L. R. B.,* 1973, 412 U.S. 84, 88, 93 S.Ct. 1961, 36 L.Ed.2d 764. It is these two decisions upon which the Board majority placed its principal reliance.

However, in each case, the Court carefully restricted its holding. In *Granite State, supra,* Justice Douglas' opinion for the Court says:

Neither the contract nor the Union's constitution or bylaws contained any provision defining or limiting the circumstances under which a member could resign (409 U.S. at 214, 93 S.Ct. at 386)

. . . .

We have here no problem of construing a union's constitution or bylaws defining or limiting the circumstances under which a member may resign from the union. (*Id.* at 216, 93 S.Ct. at 387.)

Similarly, the Per Curiam opinion in *Booster Lodge, supra,* which simply followed *Granite State,* says:

Neither its [the Union's] constitution nor its bylaws contained any provision expressly permitting or forbidding such resignations. (412 U.S. at 85–86, 93 S.Ct. at 1963.) . . .

[We] leave open the question of the extent to which contractual restriction on a member's right to resign may be limited by the Act. (*Id.* at 88, 93 S.Ct. at 1964.)

It was after the decision against it in *Booster Lodge, supra,* that the Machinists Union, in 1974, adopted the amendment to

its constitution that is quoted in the stipulation of facts. The Union asserts that its purpose was to impose "contractual restrictions on a member's right to resign," the validity of which was left open in *Booster Lodge*. The Board's position is that

[T]he Union's constitutional provision is clear and unambiguous in its language, and that language places no clear restriction, no subtle restriction, no restriction by implication, and, in sum, no restriction whatsoever upon an employee's right to resign. Affirmatively, the provision seeks to do what its plain language says it seeks to do, that is, control, not resignations by members, but rather post-resignation conduct, i. e., the conduct of employees who are no longer members.

We cannot accept this hypertechnical reading of the Union's constitution. It plainly tells its members that resignation "shall not relieve a member from his obligation to refrain from accepting employment" at the struck establishment, or from his "obligation to observe the primary picket line" during the strike or the picketing, if the resignation occurs during that time or 14 days before. Surely that is a "restriction on a member's right to resign," *Booster Lodge, supra,* a "defining or limiting [of] the circumstances under which a member may resign," *Granite State, supra.* Apparently the Board majority would confine these phrases to provisions that expressly prohibit resignation at certain times or under certain circumstances. Such a provision would be a more drastic limitation on the member's right to resign, and thus less likely to be upheld, than the provision that is before us.

In short, we conclude that this case presents the question reserved by the Court in *Granite State* and *Booster Lodge.* We answer that question in paat, by concluding that the provision before us defines or limits the circumstances under which a amember maa resign, and is a restriction on a member's right to resign.

The next question is whether the provision, construed as we construe it, is valid. Obviously, that question was not reached in

*Granite State* or *Booster Lodge.* It was expressly reserved by the Board majority in this case (231 N.L.R.B. at 720). We should give the Board, the expert body in the field of labor relations, an opportunity to consider and decide the question. *See N.L.R.B. v. Food Store Employees Union,* 1974, 417 U.S. 1, 8–9, 94 S.Ct. 2074, 40 L.Ed.2d 612; *Mohland v. N.L.R.B.,* 9 Cir., 1968, 394 F.2d 701, 704.

The petition for enforcement of the Board's order is denied. The case is remanded to the Board for further proceedings consistent with this opinion.

KENNEDY, Circuit Judge, dissenting:

I do not agree with the majority that the Board's decision is simply a "hypertechnical" construction that can be ignored. I believe there is great substance to the distinctions the Board makes, and I respectfully dissent.

The provision of the union constitution in question here seeks not to condition resignations by members, but rather to control the post-resignation conduct of employees who are no longer union members. I submit it is unlawful for a union to fine a former member for post-resignation conduct otherwise protected by § 7 of the Act. *Booster Lodge No. 405, Int'l Ass'n of Machinists v. N. L. R. B.,* 412 U.S. 84, 88, 93 S.Ct. 1961, 36 L.Ed.2d 764 (1973); *N. L. R. B. v. Granite State Joint Board, Textile Workers Union,* 409 U.S. 213, 215, 93 S.Ct. 385, 34 L.Ed.2d 422 (1972). The majority suggests that, because the Union's constitution specifically prohibits former members from returning to work following resignation during a strike, *Booster Lodge* and *Granite State* are not applicable. It concludes that the right of a labor organization to maintain solidarity during a strike and to prescribe its own rules with respect to the acquisition and retention of membership must take precedence over whatever section 7 rights its former members may have to abandon a lawful strike and return to work.

In holding that it would not imply limits on an employee's right to resign, the Su-

preme Court in *Granite State* and *Booster Lodge* reserved the question whether an explicit constitutional provision or bylaw specifically limiting the right to resign would be valid. These cases did not suggest, however, that restrictions on post-resignation conduct, even if contained in explicit constitutional provisions, might be valid. Both *Booster Lodge* and *Granite State* hold that the disciplinary power of a union is restricted to those employees who are members of the union. Once that relationship is dissolved, "the union has no more control over the former member than it has over the man in the street." *Granite State,* 409 U.S. at 217, 93 S.Ct. at 387. When a member "lawfully resigns" from the union, "its power over him ends." *Id.* at 215, 93 S.Ct. 385. Once having resigned his membership, an employee again becomes fully protected by section 7 in refraining from participation in a strike, and the imposition of a court-collectible fine for working during a strike violates section 8(b)(1)(A). *Booster Lodge,* 412 U.S. at 87–88, 93 S.Ct. 1961; *Scofield v. N. L. R. B.,* 394 U.S. 423, 89 S.Ct. 1154, 22 L.Ed.2d 385 (1969). The Supreme Court thus has employed the concept of membership to delineate in sharp relief the bounds of union authority. There is no dispute in this case that the employees had submitted valid resignations, thereby terminating their union membership. Indeed, the Union stipulated that the charging parties did effectively resign as of the date it received their written resignations. This concession is all that is really necessary to reveal the lack of substance in the Union's position regarding the characterization of the constitutional provision. If the Union had placed direct and unambiguous restrictions on the right to resign, the case might be different, but it did not do so. The logic of *Booster Lodge* and *Granite State* thus compels the conclusion that the union cannot control the conduct of these former members.

If the provision of the union constitution here involved were truly a restriction on the right to resign, then I agree with the majority that we would face the issue expressly left open in *Granite State* and *Booster Lodge; see also Scofield v. N. L. R. B.,* 394 U.S. 423, 89 S.Ct. 1154, 22 L.Ed.2d 385 (1969). That issue is not before us, however, since the union's constitution places no restriction on a member's right to resign. It attempts to control the post-resignation conduct of former members, and even the majority recognizes that a union's power does not extend so far.

The Union's right to enforce the fines it imposes on its members is a corollary of the member's rights not only to reap the benefits of continuing union membership, but also to maintain a continuing voice in the union's course of action. *N. L. R. B. v. Allis-Chalmers Mfg. Co.,* 388 U.S. 175, 191, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967). No such justifications support the imposition of court-collectible fines on former members. I cannot agree that continuing membership to the extent, but only to the extent, that the "member" remains subject to union discipline is the equivalent of the "full union membership" relied upon by the Court in *Allis-Chalmers,* and relied on again in distinguishing that decision in *Granite State.* Thus, the distinction between membership or nonmembership is far more than a verbal nicety to be dismissed as lightly as the majority opinion does.

As the Board recognized in *Local Lodge No. 1994, Internat'l Ass'n of Machinists (O.K. Tool Co.),* 215 N.L.R.B. 651, 653 (1974):

> Conformity may be none too high a price for the benefits of union membership. But the choice, at least in the absence of reasonable restrictions on resignation, is the individual's to make, not the union's. Should he choose to resign and forego the benefits of union membership, the union may not nonetheless seek to exact conformity without regard to the individual's section 7 rights.

Whether or not the union might lawfully have placed reasonable restrictions on its members' rights to resign, it did not do so here, and so I find it unnecessary for the Board on remand to consider the validity of such hypothetical restrictions. I would hold

that a court may not enforce union fines levied against a former member for exercising his section 7 rights following his lawful resignation.