724 F.2d 57
 115 L.R.R.M. (BNA) 2264, 99 Lab.Cas. P 10,715
 PATTERN MAKERS' LEAGUE OF NORTH AMERICA, AFL-CIO, and Its
Rockford and Beloit Associations, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
Rockford-Beloit Pattern Jobbers Association, Intervening Respondents.
 No. 83-1045.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 27, 1983.
Decided Dec. 21, 1983.
 
 Laurence Gold, Washington, D.C., for petitioners.
 Barbara Atkin, Assoc. Gen. Counsel, Elliott Moore, N.L.R.B., Washington, D.C., for respondent.
 Edward J. Fahy, Fahy & Cheney, Ltd., Rockford, Ill., for intervening-respondent.
 Before BAUER, ESCHBACH and COFFEY, Circuit Judges.
 BAUER, Circuit Judge.
 
 
 1
 The issue squarely confronting us is whether a union in its constitution may deny its members the opportunity to resign from the union during a strike or when a strike is imminent. The United States Supreme Court twice has acknowledged, but has not been required to decide, this issue. Booster Lodge No. 405 v. NLRB, 412 U.S. 84, 88-90, 93 S.Ct. 1961, 1964-1965, 36 L.Ed.2d 764 (1973); NLRB v. Granite State Joint Board, Textile Workers Union, Local 1029, 409 U.S. 213, 217, 93 S.Ct. 385, 387, 34 L.Ed.2d 422 (1972). We find such a rule invalid.
 
 
 2
 * In May 1976, Petitioner Pattern Makers' League of North America (the Union) amended its constitution by adding the following provision: "13. No resignation or withdrawal from an Association, or from the League, shall be accepted during a strike or lockout, or at a time when a strike or lockout appears imminent." This provision, dubbed League Law 13, was ratified in August 1976 by the membership of the various member associations of the Union.
 
 
 3
 On May 5, 1977, the Union struck members of Intervenor Rockford-Beloit Pattern Jobbers Association (the Employer), a multi-employer bargaining unit consisting of eleven companies engaged in the manufacture and sale of patterns for casting. The strike ended December 19, 1977, when the parties agreed on a new collective bargaining agreement.
 
 
 4
 Eleven employees, ten from the Beloit Association and one from the Rockford Association, tendered their resignations to the Union during the strike. The first employee resigned on September 11. He returned to work for the Employer on September 12 and on that day the Union expelled him. After the strike ended, the Union sent letters to the other ten employees explaining that their resignations were not accepted because League Law 13 prohibited resignations during strikes. The Union retained these employees as members and fined them an amount commensurate with their wages earned while working during the strike.
 
 
 5
 The National Labor Relations Board ruled that the Union violated Section 8(b)(1)(A) of the National Labor Relations Act, 29 U.S.C. Sec. 158(b)(1)(A) (1974), by fining individuals who had tendered resignations from the Union and returned to work in violation of League Law 13.[1] The Board rested its decision on the rationale enunciated in Machinists Local 1327, International Association of Machinists, District Lodge 115 (Dalmo Victor), 263 N.L.R.B. 141 (1982), petition for review filed, Nos. 82-7580 & 82-7701 (9th Cir. Oct. 4, 1982). In Dalmo Victor, the Board determined that a union's constitutional provision prohibiting members from resigning during a strike or within fourteen days preceding its commencement was invalid and thus unenforceable. The Board reasoned that the Supreme Court holdings in Granite State and Scofield v. NLRB, 394 U.S. 423, 89 S.Ct. 1154, 22 L.Ed.2d 385 (1969), led to the "inescapable conclusion" that union members have the right to resign in both strike and non-strike situations. Because League Law 13 imposed the same type of restriction as the provision struck down in Dalmo Victor as an unreasonable restriction on a union member's Section 7 right to resign, the Board held that fines imposed pursuant to the law violated Section 8(b)(1)(A).[2]
 
 II
 
 6
 The issue of resignations from unions presents an apparent conflict between two fundamental policies underlying the NLRA. First, employees should not be restrained from exercising their right to refrain from collective bargaining activities. Second, unions must be allowed flexibility to regulate their internal affairs without the interference of Congress or the courts. This apparent conflict is reflected in Section 7 of the NLRA, 29 U.S.C. Sec. 157 (1947), which guarantees employees "the right to self-organization, ... to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and ... the right to refrain from any or all of such activities ...," and in Section 8(b)(1), which makes it an unfair labor practice "to restrain or coerce (A) employees in the exercise of the rights guaranteed in section : Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein ...." Our task is to resolve the tension between these policies when the Union seeks absolutely to prohibit resignations during a strike or when one appears imminent.
 
 
 7
 The Union first claims that the proviso to Section 8(b)(1)(A) validates League Law 13. That section gives a union flexibility to manage its own affairs. Although the Supreme Court has not resolved this issue, its decisions guide our analysis of the Union's claim. The Supreme Court, in considering the parameters of a union's authority, has developed an analysis that distinguishes between union rules that touch wholly "internal" affairs and rules that affect "external" activities. Scofield, 394 U.S. at 429-30, 89 S.Ct. at 1157-58. The Scofield Court stated that "it has become clear that if the rule invades or frustrates an overriding policy of the labor laws the rule may not be enforced, even by fine or expulsion, without violating Sec. 8(b)(1)." Id. at 429, 89 S.Ct. at 1158.
 
 
 8
 The Supreme Court has applied this standard consistently to invalidate union rules that conflict with the fundamental policies of the NLRA. For example, in Granite State many union members resigned during a strike and returned to work. The union levied fines against those workers for violating a membership resolution that any member aiding or abetting the employer during the strike would be subject to a fine. The Supreme Court ruled that the union's fines frustrated the overriding "right of the individual to join or to resign from associations, as he sees fit ...." Granite State, 409 U.S. at 216, 93 S.Ct. at 387. Similarly, in Booster Lodge the union sought court enforcement of fines it imposed on employees who had resigned from the union. The employees had returned to work despite a union constitutional provision prohibiting strikebreaking by union members. The union argued that the obligation to refrain from strikebreaking bound union members notwithstanding their resignations. Booster Lodge, 412 U.S. at 89, 93 S.Ct. at 1964. The Supreme Court stated:
 
 
 9
 [I]n order to sustain the Union's position, we would first have to find, contrary to the determination of the Board and of the Court of Appeals, that the Union constitution by implication extended its sanctions to nonmembers, and then further conclude that such sanctions were consistent with the Act. But we are no more disposed to find an implied post-resignation commitment from the strikebreaking proscription in the Union's constitution here than we were to find it from the employees' participation in the strike vote and ratification of penalties in [Granite State ].
 
 
 10
 Id. at 89-90, 93 S.Ct. at 1964-1965 (footnote omitted).
 
 
 11
 Although the unions in Granite State and Booster Lodge did not restrict resignations, the Court's reasoning applies equally here. The Section 7 right to refrain from union activities encompasses the right of members to resign from the union. See, e.g., Granite State, 409 U.S. at 216, 93 S.Ct. at 387; NLRB v. Machinists Local 1327, International Association of Machinists, 608 F.2d 1219, 1221 (9th Cir.1979); NLRB v. Martin A. Gleason, Inc., 534 F.2d 466, 476 (2d Cir.1976). We think that because League Law 13 completely suspends an employee's right to choose not to be a union member and thus no longer subject to union discipline, it frustrates the overriding policy of labor law that employees be free to choose whether to engage in concerted activities. An employee's right to resign cannot be overridden by union interests in "group solidarity and mutual reliance in situations in which a collective effort is necessary to achieve a particular result" upon which the Union so heavily relies. Petitioners' br. at 9-10. Although a union has a powerful interest in maintaining its strength during a strike, see N.L.R.B. v. Allis-Chalmers Manufacturing Co., 388 U.S. 175 at 181, 87 S.Ct. 2001 at 2007, 18 L.Ed.2d 1123, an employee's Section 7 rights "are not lost by a union's plea for solidarity or by its pressures for conformity and submission to its regime." Granite State, 409 U.S. at 218, 93 S.Ct. at 387. See id. (Burger, C.J., concurring) ("[T]he institutional needs of the Union, important though they are, do not outweigh the rights and needs of the individual.").
 
 
 12
 An employee's right to resign not only is guaranteed by Section 7, but also is supported by an employee's own strong interests. Among those interests are an employee's freedom to change his or her mind about the usefulness or effectiveness of a strike, such as when an employer has been able to replace the strikers, or an employee's desire to return to work for completely personal reasons, such as family hardship. A union rule compelling membership fully subject to union authority improperly infringes upon these interests. Moreover, forced continued membership distorts the balance between encouraging collective activities among workers and protecting individuals from coercion.
 
 
 13
 The Union plainly has power to control its internal matters by enforcing rules reflecting the will of the majority of its members. See Allis-Chalmers, 388 U.S. at 181, 87 S.Ct. at 2007. When an employee is a full union member he or she is subject to those rules; when that employee resigns, the union's power ends. Just as the Union's power may not extend to an employee's post-resignation activities, it also may not extend to forbid an employee from resigning. An employee's decision to resign is personal; a union rule requiring retention of membership cannot be considered merely an "internal matter." Accordingly, a union cannot compel membership during a strike under the proviso to Section 8(b)(1)(A) in derogation of an employee's right to choose whether to be a part of such concerted activity.
 
 
 14
 The Union's second argument in support of League Law 13 is its theory of "mutual reliance": because the Union members relied on each other when voting to strike, they waived their Section 7 right to abandon the strike by resigning from the Union. The Union stresses that each member joined the Union or retained Union membership with the knowledge that resignations were prohibited during strikes or lockouts. The Union claims the union-employee relationship is thus voluntary and enforceable.
 
 
 15
 The Supreme Court, however, gave this mutual reliance theory "little weight" in Granite State, 409 U.S. at 217, 93 S.Ct. at 387, and determined that, in the absence of a union rule restraining resignations, Section 7 requires that Union members remain free to change their minds and resign during a strike. In that case union members voted to strike and, soon after the strike began, voted unanimously to fine strikebreakers. The First Circuit concluded that union members who voted had waived their right to resign without penalty in the interest of allowing the union to maintain strike discipline. 446 F.2d 369, 372-74 (1st Cir.1972), rev'd, 409 U.S. 213, 93 S.Ct. 385, 34 L.Ed.2d 422 (1972). The Supreme Court decided that the employees' interests took precedence.
 
 
 16
 We can discern no qualitative difference between employees agreeing not to aid or abet a company during a strike and a union rule forbidding resignations during a strike. Indeed, the principal reason for a rule prohibiting resignations during strikes is to insure that union members do not aid the company by returning to work.[3] Nonetheless, employees should have the right to change their minds about remaining members of the union.
 
 III
 
 17
 The Supreme Court held in Scofield that a union rule setting a ceiling on the production for which union members could accept immediate pay did not contravene any policy of the NLRA. The concept that union members were free to leave the union and escape the rule was central to the Court's analysis. Scofield, 394 U.S. at 430, 89 S.Ct. at 1158. "If a member chooses not to engage in this concerted activity and is unable to prevail on the other members to change the rule, then he may leave the union and obtain whatever benefits in job advancement and extra pay may result ...." Id. at 435, 89 S.Ct. at 1161. This fundamental principle is the embodiment of individuals' Section 7 rights and safeguards the balance between individual rights and the collective power of the union. The principle applies to the circumstances presented in this case.
 
 
 18
 The petition for review is denied.
 
 
 19
 ENFORCEMENT GRANTED.
 
 
 
 [1]
 The Board further ruled, in agreement with the findings of the administrative law judge, that the Union violated Section 8(b)(1)(A) by threatening employees with reprisals in the form of physical harm or loss of accrued pension benefits if the employees crossed picket lines, and violated Sections 8(b)(1)(A) and 8(b)(2) by imposing a fine and excessive fees and dues on an employee as a condition of readmission to the Union after expelling him for submitting his resignation and by attempting to cause an employee's discharge from employment for failing to comply with the provisions of the union-security agreement. The Union has not challenged these rulings before this court, and, accordingly, they are summarily enforced
 
 
 [2]
 The Board in Dalmo Victor recognized the competing interest of the union in reflecting the will of the majority of its members and fashioned a rule allowing the union to impose a 30-day notice of resignation requirement on its members. Two members of the Board in the majority of the case before us--Chairman Van de Water and Hunter--concurred in Dalmo Victor, agreeing that the union rule impermissibly restricted the members' right to resign, but arguing that the 30-day rule announced by the majority was arbitrary and inconsistent with the NLRA and interpretive Supreme Court rulings. The issue of the validity of a Board--fashioned 30-day notice provision is not presented in this case
 
 
 [3]
 It is the same thing to say that a rule prohibiting resignations during strikes is designed to strengthen the union's power through strike solidarity