Dennis G. WHITE, as Representative of Communications Workers of America, Local 6327, Appellant,

v.

Mary P. BALLOU, Respondent.

No. WD 39697.

Missouri Court of Appeals, Western District.

May 3, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 28, 1988.

Application to Transfer Denied Sept. 13, 1988.

Joseph W. Moreland, Robert L. Dameron, Michael T. Manley, Blake & Uhlig, James R. Anderson, Kansas City, for appellant.

Law Offices of Gwen G. Garanchini, Gwen G. Caranchini, Carroll E. McCue, Kansas City, for respondent.

Before MANFORD and TURNAGE and COVINGTON, JJ.

COVINGTON, Judge.

Plaintiff Dennis G. White, as representative of Communication Workers of America, Local 6327, AFL–CIO (the Union), appeals from a judgment entered on a jury verdict in the amount of $15,000.00 actual and $7,000.00 punitive damages in favor of defendant Mary P. Ballou on her prima facie tort counterclaim in the Union's action to collect disciplinary fines imposed on her for strikebreaking. The cause is remanded with instructions to dismiss.

Mary P. Ballou, an employee of Southwestern Bell Telephone Company, was a member of the Union when the Union called a strike against Southwestern Bell in the summer of 1983. Subsequently, in August, 1983, Ms. Ballou notified Southwestern Bell that she was revoking her union dues check-off authorization. Believing that she had thereby resigned from the Union, Ms. Ballou returned to work at Bell during the strike.

The Union maintained that Ms. Ballou had not effectively resigned from the Union and imposed fines upon her for crossing the Union's picket lines during the strike. In June, 1985, the Union filed suit against Ms. Ballou in the Circuit Court of Jackson County to collect the fines. Ms. Ballou filed an answer and a four count counter-

claim against the Union seeking damages for: 1) negligence; 2) willful and wanton conduct (punitive damages); 3) prima facie tort; and 4) conspiracy.

The Union filed a motion for summary judgment on all counts of Ms. Ballou's counterclaim. Upon hearing, Counts I, II, and IV of the counterclaim were dismissed. The Union's motion for summary judgment was denied. On the eve of trial, the Union dismissed its petition without prejudice. The case was tried on Ms. Ballou's prima facie tort claim. The jury returned a verdict awarding her $15,000.00 actual damages and $7,000.00 in punitive damages.

■ On appeal the Union asserts four points of error. The Union's assertion that the court lacked subject matter jurisdiction over the case is correct and dispositive. The authority to regulate the controversy between the Union and Ms. Ballou rests exclusively in the National Labor Relations Board (NLRB).

The principles of the preemption doctrine as the doctrine relates to the exclusive primary jurisdiction of the NLRB are set forth in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Congress has entrusted administration of the labor policy for the nation to a centralized administrative agency with its own procedures and specialized knowledge. The Court reasoned that to permit the states to control activities which are potentially subject to federal regulation would pose "too great a danger of conflict with national labor policy." *Id.*, 359 U.S. at 246, 79 S.Ct. at 780.

Using this rationale, the Court in *Garmon* provided the standard for determining when state jurisdiction is preempted by the exclusive primary jurisdiction of the NLRB:

> When an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act [29 U.S.C. §§ 157, 158], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.... If the board decides, subject to appropriate federal judicial review, that conduct is pro-

tected by § 7, or prohibited by § 8, then the matter is at an end, and the States are ousted of all jurisdiction.

359 U.S. at 245, 79 S.Ct. at 780.

The U.S. Supreme Court has twice held that a union's initiation of suits to collect funds from former members who lawfully resigned from the Union constituted an unfair labor practice under § 8(b)(1)(A) of the National Labor Relations Act. *Booster Lodge No. 405 v. NLRB*, 412 U.S. 84, 93 S.Ct. 1961, 36 L.Ed.2d 764 (1973); *NLRB v. Textile Workers*, 409 U.S. 213, 93 S.Ct. 385, 34 L.Ed.2d 422 (1972). The Union conduct which Ms. Ballou asserts as the basis for her counterclaim in prima facie tort is the Union's initiation of litigation to enforce its fine against her despite her alleged resignation. Whether or not Ms. Ballou effectively resigned from the Union as she alleges, her claim against the Union is cognizable as an unfair labor practice claim under § 8(b)(1)(A) of the NLRA and is therefore preempted.

Ms. Ballou relies on *NLRB v. Boeing Co.*, 412 U.S. 67, 93 S.Ct. 1952, 36 L.Ed.2d 752 (1973), as authority for the proposition that the collection of fines, and, by implication, collateral matters as to their validity are merely "peripheral concerns" of the Act and fall within an explicit exception to the preemption doctrine set forth in *Garmon* and recognized in subsequent Supreme Court cases. While it is true that *Garmon* and cases following do recognize a "peripheral concerns" exception to the preemption doctrine, *Id.* 359 U.S. at 243–44, 79 S.Ct. at 778–79; *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180, 188 n. 12, 98 S.Ct. 1745, 1753 n. 12, 56 L.Ed.2d 209 (1978); *Farmer v. United Broth. of C & J of America, Local 25*, 430 U.S. 290, 296–97, 97 S.Ct. 1056, 1061, 51 L.Ed.2d 338 (1977), the *Boeing* case does not bring the present case within the exception.

*Boeing* was a companion case to *Booster Lodge*. As noted above, *Booster Lodge* held that union enforcement, through lawsuits, of fines levied against former union members who resigned and returned to work during a strike constituted an unfair labor practice. Under *Boeing* questions relating to the reasonableness of the

amounts of union disciplinary fines are properly within the jurisdiction of the state courts because such determinations "would necessarily lead the Board to a substantial involvement in strictly internal union affairs." *Id.* 412 U.S. at 74, 93 S.Ct. at 1956. The question of whether the fine otherwise constitutes an unfair labor practice is within the admitted authority of the NLRB under § 8(b)(1)(A) of the Act. *Id.* at 69, 93 S.Ct. at 1954. *Boeing* and *Booster Lodge* together establish that determination of the validity of union disciplinary fines is a matter of central, not peripheral, concern to the NLRB and within its exclusive jurisdiction, whereas determination of the reasonableness of fines is outside the jurisdiction of the Board and therefore properly within the jurisdiction of the state courts. Ms. Ballou has not attacked the fines as unreasonable, but maintains, rather, that they are invalid.

The issue of jurisdiction was not raised in the trial court. Lack of subject matter jurisdiction may be raised at any stage of the proceedings, even for the first time on appeal. *Commercial Bank of St. Louis County v. James*, 658 S.W.2d 17, 21 (Mo. banc 1983). Ms. Ballou contends that, by invoking the jurisdiction of the state court initially, the Union has waived the protection of the preemption doctrine. Where subject matter jurisdiction does not exist, the defense may not be waived; subject matter jurisdiction may not be conferred by consent of the parties, by appearance or answer, or by estoppel. *State Tax Commission v. Administrative Hearing Commission*, 641 S.W.2d 69, 72 (Mo. banc 1982).

Because the alleged Union conduct upon which Ms. Ballou's counterclaim centered was, at least, "arguably" prohibited by § 8(b)(1)(A) of the NLRA, Ms. Ballou's claim was within the exclusive primary jurisdiction of the NLRB. The cause is remanded for dismissal.

All concur.