David T. ATKINS, Rex Long, Thomas Westphal, Eric Younghans, and Brett Stone, Plaintiffs–Respondents,

v.

Gerald McPHETRIDGE, Larry Stevens, and William Choate, Defendants–Appellants.

No. 27660.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 6, 2006.

Motion for Rehearing or Transfer to Supreme Court Denied Dec. 28, 2006.

Application for Transfer Denied Feb. 27, 2007.

117

Donald W. Jones, Austin E. Williamson, Hulston, Jones & Marsh, Springfield, for Appellants.

Scott L. Brown, Blake & Uhlig, P.A., Kansas City, for Respondents.

JOHN E. PARRISH, Judge.

Gerald McPhetridge, Larry Stevens, and William Choate (defendants) appeal a summary judgment for David T. Atkins, Rex Long, Thomas Westphal, Eric Younghans and Brett Stone (plaintiffs). Plaintiffs are executive board members of International Brotherhood of Electrical Workers, Local Union No. 53 (Local 53). Plaintiffs' action sought collection of fines imposed on defendants for working for an employer that had been declared "in difficulty" with the International Brotherhood of Electrical Workers (IBEW). This court affirms in part, reverses in part and remands with directions.

## Background

Defendants were members of IBEW. McPhetridge asserts his history with IBEW was:

January 1996 Joined and initiated as member of Local 53

Late 1999 or 2000 Employed by Hartman, Inc.(Hartman) [1]

Stevens and Choate claim their histories with IBEW were:

Early 1970s Became members of Local 753 while employed with City Utilities of Springfield, Missouri (City Utilities)

August 1994 Choate became inactive member of Local 753 due to promotion to management position at City Utilities

January 2000–June2001 Stevens was inactive member of Local 753 due to promotion to management position at City Utilities

2001 Stevens and Choate employed by Hartman

June 2001 Stevens reactivated membership in Local 753 after retirement from City Utilities

September 2001 Choate reactivated membership in Local 753

2004 Stevens and Choate resigned from IBEW

Plaintiffs contend that "[b]y virtue of their membership in Local 53 and/or Local 753, and [IBEW], Defendants ... became subject to the provisions of the International Constitution and/or the By-laws of Local 53." They contend that "[t]he provisions of the International Constitution and/or Local 53 By-laws constitute a contract between the Defendants and Plaintiffs."

Plaintiffs alleged that on or about June 13, 2003, a member of Local 53 filed charges against defendants alleging they had violated the International Constitution by performing electrical work for a contractor not signatory to a collective bargaining agreement with IBEW or its affiliate locals; that defendants' conduct violated Article 25, Section 1, subsection q of the International Constitution. Plaintiffs assert that a hearing was held before a "Trial Board" of Local 53 at which none of defendants appeared; that "[d]efendants, and each of them, were found guilty of all charges alleged against them." A fine in the amount of $5,000 was assessed against each defendant. Plaintiffs sought judgments in the amount of $5,000 against each defendant.

The trial court heard motions for summary judgment filed by plaintiffs and by defendants. It granted plaintiffs' motion and denied defendants' motion. Judgment was entered in favor of plaintiffs against

---

1.  McPhetridge contends he was employed by Hartman as a supervisor. He claims that because he was employed in a supervisory capacity by Hartman, he was an inactive, but dues paying, member of IBEW.

each defendant in the amount of $5,000. Judgment was further entered for plaintiffs on counterclaims brought by defendants. Costs were taxed to defendants.

### Defendants' Appeal

Defendants' appellants' brief was "FILED AS IS" by this court. It states three points relied on, none of which are models of compliance with Rule 84.04(d). This deficiency was brought to the attention of defendants' appellate counsel at oral argument, although counsel expressed no concern about the obvious defects.

■ Rule 84.04 mandates requirements for appellants' briefs.

Rule 84.04(a)(4) requires an appellant's brief to include "points relied on." Rule 84.04(d) prescribes what points relied on shall contain. Rule 84.04(d)(1) explains:

Where the appellate court reviews the decision of a trial court, each point shall:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]."

Rule 84.04(d)(4) explains, "Abstract statements of law, standing alone, do not comply with this rule. Any reference to the record shall be limited to the ultimate facts necessary to inform the appellate court and the other parties of the issues. Detailed evidentiary facts shall not be included."

*Environmental Energy Partners, Inc. v. Siemens Bldg. Technologies, Inc.*, 178 S.W.3d 691, 713 (Mo.App.2005). "Deficient points relied on do not preserve issues for appellate review." *Bolz v. Hatfield*, 41 S.W.3d 566, 571 (Mo.App.2001).

Defendants' Point I is a rambling narration that includes three subparagraphs and, with the "list of cases" set out after each subparagraph, covers more than three pages. It does not identify a ruling or action of the trial court that is being challenged as required by Rule 84.04(d)(1)(A). Rather, it tells this court that it "should review *de novo* and reverse the trial court's erroneous grant of summary judgment ... and should order defendants' counter motion for summary judgment sustained." The three subparagraphs suggest (A) that "[a] *de novo* review is the proper standard of review" and identifies claimed failures of plaintiffs' motion for summary judgment for reasons it says are shown in subparts of a subsequent point relied on; (B) that "[t]his court's *de novo* review should include reviewing the denial of defendants' counter motion for summary judgment" because "Rule 84.14 requires this court to grant the judgment which the trial court should have entered"; and (C) that the trial court erred by "failing to recognize plaintiffs have admitted by default amended counterclaim III" that asserted the fines for which plaintiffs sought judgment were procured by fraud. Subparagraph (C) continues by asserting that "plaintiffs' agent" made various statements, which it attempts to summarize, to each defendant.

■ In addition to not identifying a ruling or action by the trial court that defendants claim was erroneous, Point I

does not concisely state legal reasons for defendants' claim that the trial court committed reversible error as Rule 84.04(d)(1)(A) requires. Its introductory paragraph is not assisted by its subsequent subparagraphs. The subparagraphs include references to another point relied on as "legal reasons" for whatever assertion Point I is intended to make. The subparagraphs in Point I include abstract statements of law, not in a format compatible with Rule 84.04(d)(4), that are contrary to the admonition of Rule 84.04(d)(4). The final subparagraph (which covers more than one page) is multifarious in that it complains of three perceived failings by the trial court with respect to its dismissal of Count III of defendants' counterclaim. Points containing multifarious allegations of error do not comply with Rule 84.04. *Martin v. Reed*, 147 S.W.3d 860, 863 (Mo.App.2004); *Stelts v. Stelts*, 126 S.W.3d 499, 504 (Mo. App.2004).

■ Notwithstanding non-compliance with Rule 84.04, appellate courts may exercise discretion and attempt to resolve issues on their merits unless the defective point impedes disposition of the case on its merits. *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo.banc 1997). A brief impedes disposition on the merits if it fails to give notice of the basis for the claimed error. *Id.*

■ Point I, together with the eight-page argument directed to it, does not identify clear, concise bases for defendants' claim of error by the trial court. Were this court to seine the record in an attempt to discern perceived errors consistent with the ill-framed Point I, this court would be acting as an advocate for defen-

dants, an inappropriate undertaking for an appellate court. *RPCS, Inc. v. Waters*, 190 S.W.3d 580, 589 (Mo.App.2006). The defects in Point I impede its disposition on the merits. Point I is dismissed.

Point II, with its eight subparagraphs (two of which have additional subparagraphs) and its "list[s] of cases" that follow those subparagraphs, traverses more than seven pages of defendants' appellants' brief. It identifies the error defendants contend the trial court made in that its initial statement claims "[t]he trial court erred in sustaining plaintiffs' motion for summary judgment and ... also erred in denying the motion for summary judgment of the defendants." [2] However, the attempted statements of legal bases for its claims of reversible error are anything but concise. Point II does not comply with the requirement of Rule 84.04(d)(B)(1).

Point II, as this court understands it, attempts to raise issues concerning (1) whether the judgment enforced penalties rather than damages; (2) whether the assessments sought to be collected were supported by sufficient evidence; (3) whether procedural requirements for timely filing charges before the union trial board were met; (4) whether the union's actions were violative of certain of defendants' constitutional rights; (5) whether administrative appeals were required by defendants if they were to challenge the findings of the union trial board; and (6) whether the issues challenged are preempted by federal law. The point is multifarious in that it collapses disparate contentions of error into a single point relied on contrary to Rule 84.04(d). The general rule is that such a point preserves nothing for review.

**2.** Defendants included as a claim of error that the trial court "den[ied] the motion for summary judgment of defendants" notwithstanding that "[d]enial of a motion for summary

judgment does not present an appealable issue." *Shelter Mut. Ins. Co. v. DeShazo*, 955 S.W.2d 234, 238 (Mo.App.1997).

*Rushing v. City of Springfield,* 180 S.W.3d 538, 539 (Mo.App.2006); *In re D.L.W.,* 133 S.W.3d 582, 584 (Mo.App.2004); *Cooper v. Bluff City Mobile Home Sales, Inc.,* 78 S.W.3d 157, 167 (Mo.App.2002).

As with respect to Point I, this court is left with a decision as to whether it should exercise discretion in undertaking to resolve any issue on the merits that Point II attempts to assert. This court declines to undertake the task of evaluating each subparagraph in Point II as it would if each were an independent point on appeal. This court concludes, however, that there are two central issues capable of identification and determination on the merits without this court being thrust into the arena of advocacy for either plaintiffs or defendants. Those issues are (1) whether the judgment enforced penalties rather than damages and (2) whether the assessments sought to be collected were supported by sufficient evidence.

With respect to the first issue, defendants claim what plaintiffs sought was collection of penalties; that collection of these amounts would be contrary to the law and public policy of this state. Defendants rely on *Ridings v. Thoele, Inc.,* 739 S.W.2d 547 (Mo.banc 1987), and *Trout v. Watkins Livery & Undertaking Co.,* 148 Mo.App. 621, 130 S.W. 136 (1910). This court finds neither case persuasive with respect to the issue as it exists under the facts in this case.

*Ridings* relates to whether punitive damages are allowable in a statutory action brought pursuant to § 407.410.2, RSMo 1978, by a franchisee against a franchisor for termination of a franchise. *Ridings* held that the remedial language of the statute pursuant to which the action was brought did not permit the award of punitive damages. 739 S.W.2d at 549. This case is neither brought under the statute to which the holding in *Ridings* applied

nor is it an action founded upon a franchise agreement.

*Trout* was a breach of contract action in which punitive damages were sought against a livery company whose failure to transport a passenger resulted in the passenger's ill health because of exposure to adverse weather. The court held that, at that time, "exemplary or punitive damages [were] not allowed in suits on contract, except for breach of promise of marriage, when it appear[ed] the breach was made abruptly and with circumstances of humiliation." 130 S.W. at 140. *Trout* suggested that it was sometimes asserted that there were other exceptions to the disallowance of punitive damages for contract actions, but that "[s]uch cases are in fact actions brought upon the theory that legal rights growing out of a contract have been violated, or legal duties resting thereon neglected." *Id.* As discussed, *infra,* this court finds that the facts and issues in the case now before it are not akin to those in *Trout;* that *Trout* is inapplicable in that what plaintiffs seek to enforce in this case is not punitive damages.

■ Unions provide representation for their members for purposes of bargaining with employers regarding working conditions and compensation. *See National Labor Relations Board v. Allis–Chalmers Mfg. Co.,* 388 U.S. 175, 180, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967). A union may protect its status through reasonable discipline of those members. *Id.* at 181, 87 S.Ct. 2001. Provisions for fines or expulsion from membership of violating members are common-place in union constitutions and bylaws. *Id.* at 181–82, 87 S.Ct. 2001. Courts have traditionally enforced disciplinary provisions imposed by unions. *National Labor Relations Board v. Boeing Co.,* 412 U.S. 67, 75, 93 S.Ct. 1952, 36 L.Ed.2d 752 (1973). Unions may resort to courts for enforcement of disciplinary pro-

visions due to the contractual nature of their relationships with their members. *Id.* "[T]he potentiality of resort to courts for enforcement is implicit in any binding obligation." *National Labor Relations Board v. Allis–Chalmers Mfg. Co.,* 388 U.S. at 182, 87 S.Ct. 2001.

The matter of unions dealing with its members was at issue in *White v. Ballou,* 755 S.W.2d 246 (Mo.App.1988). The Western District of this court, relying on *National Labor Relations Board v. Boeing, supra,* concluded that issues involving application of union rules to its members fell within the jurisdiction of the National Labor Relations Board; that state courts were preempted from adjudicating those issues. However, the Western District suggested that "[u]nder *Boeing* questions related to the reasonableness of the amounts of union disciplinary fines are properly within the jurisdiction of the state courts." 755 S.W.2d at 247–48. It concluded:

> *Boeing* and *Booster Lodge* [*No. 405 v. NLRB,* 412 U.S. 84, 93 S.Ct. 1961, 36 L.Ed.2d 764 (1973)], together establish that determination of the validity of union disciplinary fines is a matter of central, not peripheral, concern to the NLRB and within its exclusive jurisdiction, whereas determination of the reasonableness of fines is outside the jurisdiction of the Board and therefore properly within the jurisdiction of the state courts.

*Id.* at 248. This court agrees. *Boeing* states that "[i]ssues as to the reasonableness or unreasonableness of [union fines against its members] must be decided upon the basis of the law of contracts, voluntary associations, or such other principles of law as may be applied in a forum competent to adjudicate the issue." 412 U.S. at 74, 93 S.Ct. 1952.

The fines that were assessed were disciplinary fines, the validity of which is not for determination by state courts. *See Boeing, supra.* They were not punitive damages. *Id.* Plaintiffs sought to collect the fines through a contract action. The issue, therefore, is whether the amounts of the fines imposed are consistent with damages that may be awarded under Missouri law. Or, stated otherwise, is there sufficient evidence that Local 53 sustained damages in the amounts of the fines assessed by the trial board that was convened by the union?

■ The trial board concluded, pursuant to its notes, that the amounts of the fines that were imposed were based on the work assessments the union would have received over the approximately two years the respective defendants worked for Hartman. Whether there is evidence to support that conclusion and whether those amounts are reasonable are material issues of fact. The trial court, therefore, erred in granting summary judgment. *See* Rule 74.04(c)(6). Point II, for the reasons stated, is granted. The judgment must be reversed and the case remanded for further proceedings.

Defendants' final point, Point III, is directed to the trial court's denial of defendants' request to file amended counterclaims following the granting of plaintiffs' motion to dismiss for failure to state causes of action. Point III possesses deficiencies akin to those discussed with respect to Points I and II. Point III, however, is directed primarily to claimed procedural failings. As such, the basis for its claims can be sufficiently discerned to permit those claims to be addressed on the merits. Defendants assert that the trial court erred in refusing their requests to file amended counterclaims to correct deficiencies that led to the dismissal of the prior counterclaims

in that "under Rules 67.06 and 55.33(a), leave to amend shall be freely granted when justice requires."

Each defendant, individually, filed counterclaims in response to plaintiffs' amended petition. The counterclaims attempted to assert actions for abuse of process. The trial court granted a motion to dismiss that was directed to each defendant's counterclaim. Thereafter, the case was transferred to another judge at defendants' request. Defendants then sought leave to file an amended answer and first amended counterclaims asserting unlawful union activity (Count I), abuse of process (Count II), and fraudulent misrepresentation (Count III). The trial court allowed the filing of the amended answer and Count III of the amended counterclaim. It denied the request to file amended counterclaim Counts I and II.

■ Rule 55.33(a) provides that leave to amend shall be freely given when justice so requires. Whether to grant leave to amend a pleading, however, is within a trial court's discretion. *Tindall v. Holder,* 892 S.W.2d 314, 327 (Mo.App.1994). Although the rule contemplates the liberal exercise of a trial court's discretion, it does not grant a party the absolute right to file an amended pleading. *Id. See also Kanefield v. SP Distributing Co., L.L.C.,* 25 S.W.3d 492, 498 (Mo.App.2000). Denial of leave to amend is presumed correct and will not be disturbed on appeal unless the moving party demonstrates that the trial court "clearly and palpably" abused its discretion. *Kanefield, supra.*

Count II of defendants' amended counterclaims is an attempt to plead abuse of process. Defendants allege that the purpose of plaintiffs' actions in filing disciplinary charges within the union was to "compel" defendants to violate duties of loyalty owed their employer; to "violate 29 U.S.C. § 157"; to "violate" defendants' rights under 29 U.S.C. § 158(a)(2) "to coerce and assist IBEW Local 53 to organize"; to "interfere" with defendants' employment with Hartman; to "force" defendants to resign from the IBEW; and to "destroy" defendants' membership and associated privileges in the union.

■ Title 29 U.S.C., §§ 157 and 158 outline rights granted employees and unfair labor practices of employers and labor organizations. State court jurisdiction is preempted by the NLRB when activity is arguably subject to § 7 or § 8 of 29 U.S.C. §§ 157 and 158. *Hinton v. Sigma–Aldrich Corp.,* 93 S.W.3d 755, 759 (Mo.App.2002); *White v. Ballou, supra,* at 247. The trial court did not abuse its discretion in denying defendants' request to file an amended counterclaim Count II.

Count I of defendants' first amended counterclaim asserts acts of alleged unlawful union activity. It alleges that discipline imposed by plaintiffs violated defendants' "rights under Section 7 of the National Labor Relations Act (NLRA), 29 U.S.C. § 157" and "29 U.S.C. § 158(a)(2)." The claim alleged is preempted by the NLRB. The trial court did not abuse its discretion in denying defendants' request to file an amended counterclaim Count I. Point III is denied.

The judgment is reversed as to the amount of the award of disciplinary fines imposed by the union's trial board that was reasonable. The case is remanded for further proceedings with respect to determining if the assessments levied against defendants are unreasonable and arbitrary or whether they are supported by sufficient evidence. In all other respects, the judgment is affirmed.

RAHMEYER, P.J., and T. SCOTT, SR. J., concur.