In re the MARRIAGE OF Gary Wayne ERICKSON and Virginia Kay Erickson,

Gary Wayne Erickson, Petitioner–Appellant,

v.

Virginia Kay Erickson, Respondent–Respondent.

No. SD 31650.

Missouri Court of Appeals, Southern District, Division Two.

April 15, 2013.

Rehearing Denied May 7, 2013.

Christopher J. Stark, Springfield, MO, for Appellant.

Eric G. Jensen, Springfield, MO, for Respondent.

DON E. BURRELL, J.

Gary Wayne Erickson ("Husband") appeals the civil contempt judgment that ordered him to pay his former wife, Virginia Kay Erickson ("Wife"), $70,120.32 for her unpaid share of Husband's retirement pay, $4,753.76 in attorney fees, and future payments of $785.27 per month for Wife's ongoing share of Husband's retirement pay accruing after August 31, 2010. The contempt claim was based upon the parties' 1990 Bexar County, Texas divorce decree ("the original decree"), which Wife registered as a foreign judgment in Greene County, Missouri in 2007 ("the foreign judgment").

■ In a single, multifarious point relied on, Husband asserts the trial court erred in: 1) "finding [him] [']guilty['] of civil contempt"; 2) awarding attorney fees to Wife; 3) modifying the original decree; 4) denying post-trial motions he filed seeking a dismissal of the case, leave to file pleadings out of time, and a rehearing of the matter; and 5) denying him due process of law under the United States and Missouri constitutions.[1] The point also as-

---

1. Wife's "Motion for Contempt, Motion for Evidentiary Hearing, For Show Cause Order, For Attorney Fees and Costs and Notice of Hearing on Show Cause Order" ("the con-

tempt motion") was heard by a family court commissioner. The commissioner's recommended findings and judgment were then

serts five grounds supporting the alleged errors: A) Husband was not served with notice of the registration of the foreign judgment under Rule 74.14 and section 511.760;[2] B) "no summons was issued or served upon [Husband]" under Rules 54.01, 54.02, and 54.04 concerning the contempt proceeding, and Husband was not "advised of his right to counsel and right to file responsive pleadings"; C) the trial court exceeded its "jurisdiction" by assessing, collecting, and distributing attorney fees "without order of the circuit court"; D) "[t]he [trial] court abused its discretion by refusing to allow [Husband], who had been representing himself *pro se*, to file th[r]ough his attorney responsive pleadings out of time"; and E) the trial court "exceeded its jurisdiction" in modifying the original decree "because the [trial] court recalculated arrearages based upon factors not allowable under the original [decree]."[3]

Finding no merit in any of Husband's claims, we affirm the judgment.

## Applicable Principles of Review and Governing Law

■ "The trial court's judgment is presumed correct, and [the appellant] bears the burden of proving it erroneous." *Grider v. Tingle*, 325 S.W.3d 437, 440 (Mo. App. S.D.2010). A judgment in a civil contempt proceeding will be affirmed "unless there is no substantial evidence to support the decision, the decision is against the weight of the evidence, or the decision erroneously declares or applies the law." *Timmons v. Timmons*, 139 S.W.3d 625, 628 (Mo.App. W.D.2004). "If the facts of a case are contested, then this Court defers to the trial court's determinations regarding those, facts." *Board of Educ. of City of St. Louis v. Missouri State Bd. of Educ.*, 271 S.W.3d 1, 7 (Mo. banc 2008). *De novo* review is applied "to questions of law decided in court-tried cases." *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012).

■ "Dissolution decrees, as well as the property agreements incorporated therein, are enforceable like any other judicial judgment." *Booher v. Booher*, 125 S.W.3d 354, 356 (Mo.App. E.D.2004). "Civil contempt is intended to benefit a party for whom an order, judgment, or decree was entered. Its purpose is to coerce compliance with the relief granted." *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 578 (Mo. banc 1994). "Contempt may be used to effectuate all constitutionally permitted orders contained in a dissolution decree." *Ellington v. Pinkston*, 859 S.W.2d 798, 800 (Mo.App. E.D. 1993).

adopted and executed by an associate circuit judge. Thereafter, the associate circuit judge heard and ruled Husband's "Motion Under [Rule 130.13(a) ] For Rehearing Before A Circuit Judge" ("motion for rehearing"). We will collectively refer to the family court commissioner and associate circuit judge as "the trial court" except where it is necessary to distinguish between the two in addressing Husband's error claims.

**2.** All rule references are to Missouri Court Rules (2012); unless otherwise indicated, all statutory references are to RSMo 2000.

**3.** In his jurisdictional statement, Husband also alleges a time limitation as to the registration of the foreign judgment as one of the bases for his claim that the trial court violated Rule 74.14. His statement of facts asserts that a similar claim was presented in his "Supplementary Motion to Dismiss [Wife's] Motion for Contempt and to Strike All Orders of the Court for Lack of Jurisdiction." Husband did not include these contentions in his point or address them in the argument section of his brief. "Issues not raised in the point relied on, as well as those that are unsupported by argument, are deemed abandoned." *Jones v. Jones*, 296 S.W.3d 526, 528 n. 1 (Mo.App. W.D.2009).

To establish a prima facie case of civil contempt, the complaining party must prove: "(1) the contemnor's obligation to perform an action as required by the decree; and (2) the contemnor's failure to meet the obligation." *Walters v. Walters*, 181 S.W.3d 135, 138 (Mo.App. 2005).... Where the proceeding for civil contempt arises from an alleged failure to comply with a judgment of dissolution, "'the contemnor has the more ready access to any facts to excuse the default [ ]'" and therefore "bears the burden to prove that the non-compliance was not an act of contumacy." *Id.* (quoting *State ex rel. Watkins v. Watkins*, 972 S.W.2d 609, 611 (Mo.App. 1998)).

*Stuart v. Ford*, 292 S.W.3d 508, 514 (Mo. App. S.D.2009).

## Facts and Procedural Background [4]

The original decree addressed Husband's anticipated "military pension and/or retired pay" based upon his service in "the Armed Forces of the United States" ("Husband's retirement pay") and found that Wife was entitled to a share of Husband's "net military retirement" based upon the number of years that the parties were married while Husband was in the military. It stated that "at the time of [the] divorce [the parties had been married] 183 months while [Husband] was in the service and had obtained the rank of major." The original decree included the following formula for calculating Wife's share of Husband's retirement pay:

*183 months of marriage while [H]usband in service × 50%*

Number of actual months of Husband's Military Service when he retires (Retirement based upon rank of Major)

The original decree also required Husband, upon retirement, to "execute all forms, documents and papers necessary in order to have the military payment authority pay directly to [Wife] that percentage share of his retirement which equals her entitlement[.]"

Wife filed her contempt motion on May 7, 2009. That same day, the trial court executed a "Notice and Show Cause Order" ("the show-cause order") and set the contempt motion for a hearing.[5] Husband's address was listed on the show-cause order as: "[house address redacted] St. Andrews, Fairfield, CA 94533[.]" Proof of service by a Solano County, California sheriff's deputy upon Husband at a different address was subsequently filed by Wife's counsel at the contempt hearing. Additional documents shown as served with the contempt motion in the proof of service were: "Motion of [sic] Evidentiary Hearing, For Show Cause Order, For Attorney Fees and Costs and Notice of Hearing on Show Cause Order[.]"

Docket entries indicate that the contempt hearing was continued once at the request of Wife's counsel and in December 2009 upon a "joint request" by the parties.

On March 23, 2010, the trial court received the following letter from Husband:

---

4. We "view the evidence and the inferences that may be drawn therefrom in the light most favorable to the judgment." *Schubert v. Schubert*, 366 S.W.3d 55, 62 (Mo.App. E.D. 2012).

5. After Husband filed his notice of appeal, he was granted additional time to file the record and "leave to present all issues concerning the correctness of the trial court's record to the trial court for its consideration and deter-

mination[.]" After a hearing, the trial court found, *inter alia*:

> The header to the [May 11, 2009] docket entry, to the extent it reflects that a "summons" was either prepared or issued, is inaccurate. Although said header was mandated by OSCA's case management system, as no other more appropriate header exists within said system. The body of said docket entry is accurate in all other respects.

I request a postponement of the March 29 hearing date. As you can see from the attached documents, I have tried to comply and get this matter resolved outside the courtroom. As referenced in the attached[,] my friend [name redacted,] who has been assisting me informally, an attorney licensed in the State of California, thought it was inappropriate to address the court, since he is not licensed in Missouri.[6]

The return address on Husband's letter was identical to the address the trial court had used for Husband in its show-cause order, except that the zip code on Husband's letter was 94534 instead of 94533.

In response to Husband's letter, the trial court mailed a notice "to counsel of record and any unrepresented parties" that stated the trial court had reviewed Husband's letter, that Wife's attorney had no objection to a continuance, and that the contempt hearing was continued to July 26, 2010 for a two-hour evidentiary hearing.

Husband did not appear at the July 26th contempt hearing in person or by counsel. The hearing was held as scheduled before the family court commissioner, and Wife presented the following evidence in support of her contempt motion.

The original decree was registered as a foreign judgment in Greene County, and a copy was admitted into evidence as Exhibit 1. The majority of Husband's work in the military was as "a financial officer for a hospital." Wife thought that Husband had retired in 2001, but she was not formally notified of his retirement. A document described as "a certificate of release or a discharge from active duty" pertaining to Husband was admitted into evidence as Exhibit 6. Based on this exhibit, Wife believed that Husband had retired "as of January 31, 2001[.]"[7]

In May 2006, Wife applied to the military for her share of Husband's retirement pay, and her application used the formula set forth in the original decree. A letter she subsequently received from the military, admitted as Exhibit 4, indicated that her benefit was calculated to be "10.2080 percent[,]" and it indicated that Husband had retired as a lieutenant colonel. Wife believed the military's calculation to be in error because while her share of Husband's retirement pay was to be based upon his *pay* as a major, it was not to be based only upon the *time* that Husband held the rank of major. Beginning in August 2006, Wife began receiving $325.16 per month from the military as Wife's share of Husband's retirement pay as calculated by the military. Thereafter, her monthly payment was raised in increments so that by January 2010, she was receiving monthly payments of $408.05. Wife did not receive any military retirement benefit payments prior to August 2006.

Wife believed that her monthly share of Husband's retirement pay should have been 29.9% based upon Husband's 306 months of service in the military and his having been married to Wife for 183 of those months. She testified that based upon that percentage, she was owed $85,319.95 in unpaid retirement pay. Exhibits 9, 10, 11, 12, and 13, which show Wife's calculations to this effect, were also admitted into evidence. Finally, Exhibit 14, also admitted into evidence, indicated that Wife had incurred $4,753.76 in attorney fees and expenses in pursuing her contempt motion.

6. The letter was accompanied by copies of three faxes Husband's friend had sent to Wife's counsel.

7. Only exhibits 9–13, the exhibits incorporated into the judgment, were included in the record on appeal.

At the completion of the contempt hearing, the family court commissioner stated that it was finding in favor of Wife on the issue of contempt, but that it was leaving the record open to allow Husband to provide the court with information about the difference in pay between a major and a lieutenant colonel. The following notice, signed by the associate circuit judge, was mailed that same date to "counsel of record and any unrepresented parties":

Hearing Held

[Wife] appears with [her attorney]. [Wife's attorney] presents proof of service dated June 16, 2009. [Husband] does not appear, though having notice of hearing. Court notes that [Husband] has clearly received prior Court notice, having requested continuance of prior hearing. Hearing held, evidence heard. Court finds that [Husband] has wil[l]fully and intentionally disobeyed [a] prior Court order which required him to file all necessary documents so that [Wife] could receive [her] entitlement to [Husband's] retirement pay. [Husband] is, therefore, found to be in contempt. Court awards [Wife] attorney fees and expenses in the amount of $4,753.76. Court leaves record open for [Husband] to submit documentation to the Court of retirement pay of [a] Major versus a [lieutenant] colonel, so that Court may calculate [the] proper amount due. Record will be left open for sixty days. If no information is provided by [Husband], Court will enter Judgment against [Husband] in total amount of $85,319.95, the amount calculated by [Wife] with the only information provided to her by [Husband].

Husband, still acting *pro se*, sent the trial court a letter dated July 30, 2010 that requested "reconsideration" of the case and stated that Husband had not attended the July 26th hearing because his "wife had just undergone emergency back surgery and could not be left alone[.]" The

letter did not claim that Husband had attempted to contact the trial court with this information prior to the hearing date. In fact, it specifically acknowledged that Husband understood that he "should have petitioned the Court again for a postponement[.]"

In a docket entry dated August 4, 2010, mailed to Husband and counsel of record, the trial court stated that it had reviewed Husband's letter and was denying his "[r]equest to vacate prior order[.]" The docket entry also gave Husband "sixty days to submit retirement pay of [a] Major versus Lt. Colonel."

On September 16, 2010, the trial court received a check from Husband in the amount of $4,753.76—the amount the trial court indicated it would be awarding Wife for her attorney fees—made payable to the circuit court. The trial court ordered that the money be deposited into the Court registry and then disbursed to Wife. The clerk's office held the funds for two weeks before disbursing them to Wife. A September 17, 2010 docket entry stated that the trial court had reviewed a "chart" provided by Husband, that the back retirement pay owed to Wife was $70,120.32, and that Wife's portion of Husband's "net" retirement pay should be 25%. The trial court gave the parties until November 1, 2010 to respond to its announced calculations, and it stated that "[a]fter that time, the record shall be closed and the Court will enter a Judgment against [Husband] for [the] amount owed to [Wife]."

On November 1st, Wife submitted her response to the trial court's announced calculations. The following day, the day after the expiration of the time given for the parties to file any such responses, the trial court directed Wife's counsel to prepare a proposed judgment consistent with

the trial court's stated findings and Wife's response to them.[8]

On November 15, 2010, Husband, now acting by counsel, filed a "Special Entry of Appearance and Motion to Dismiss for Lack of Jurisdiction[.]" Three days later, he filed a "Supplementary Motion to Dismiss [Wife's] Motion for Contempt and to Strike All Orders of the Court for Lack of Jurisdiction" (collectively, "the motions to dismiss").[9]

On April 28, 2011, the trial court declared the record "closed" and overruled the "Motion to Dismiss," [10] finding that the foreign judgment "was not returned as undelivered" and that the "[s]tatute of limitations did not begin to run until [Wife] had [the] right to collect [Husband's] military retirement. [Husband] retired on January 1, 2001. [Husband] has submitted himself to the jurisdiction of this Court." Wife's counsel was again directed to prepare a proposed judgment. Husband's counsel subsequently filed a "Motion for Leave to File Responsive Pleadings to [Wife's] Motion for Contempt and Order to Show Cause Out of Time" ("motion to file pleadings out of time"), accompanied by an affidavit from Husband stating that he "at no time received" notice of the registration of the foreign judgment. Husband's motion to file pleadings out of time was denied after a hearing, at which Husband was represented by instant counsel.

The judgment was entered by the associate circuit judge on June 3, 2011. In it, the trial court took judicial notice of its official court files, "including the registration of [the] foreign judgment file relating to these parties[,]" and it found that the original decree was registered as a foreign judgment on June 14, 2007. The judgment further stated that

> [Husband] willfully and intentionally disobeyed the clear orders of the Court in that he failed and refused, when [Husband] retired from military service, to "execute all forms, documents and papers necessary in order to have the military payment authority pay directly to [Wife], that percentage share of [Husband's retirement pay], which equals her entitlement thereto", based upon the formula set out in the [original decree].

The trial court also found that Husband had the ability to comply with the original decree.

The judgment used the same formula as that provided in the original decree to determine Wife's marital share of Husband's retirement pay. The trial court found that "[Wife] is entitled to receive 29.9% of [Husband's] net pay as that pay is established at the rank of Major" and "25% of [Husband's] net pay as that pay is established at the rank of [lieutenant] Colonel, which is the rank and level at which he currently receives his retirement pay."

---

8. We cannot determine with any certainty from the record whether Husband filed a response to the trial court's proposed findings.

9. The motions to dismiss alleged, *inter alia*, that the trial court lacked jurisdiction over Husband and the subject matter of the original decree; Husband had not submitted to the jurisdiction of the trial court; that Wife failed to comply with Rule 74.14 and sections 511.760.2 and .3 regarding the registration of the foreign judgment, including that the filing was made after the expiration of the Texas

statute of limitation; the registration of the foreign judgment was "totally void"; and no summons or notice of the time for pleading was served on Husband under sections 511.760.4 and 5.

10. The docket entry at issue refers to the motions to dismiss in the singular, and it makes no reference to Husband's supplemental motion to dismiss. Husband does not allege on appeal that the trial court failed to rule on all of his motions.

The trial court amended and incorporated exhibits 9 through 13 into the judgment. Exhibit 9 reflected 183 months of military service during the marriage divided by 306 months of total military service. That figure was then multiplied by 50% to achieve a monthly benefit of 29.9%. Exhibit 10, as amended by the trial court, reflected the calculation necessary to achieve the proportionate share of the greater retirement pay at the level of lieutenant colonel based upon the net pay disbursed to Husband. Four of the original typed figures had been marked through and hand-written corrections were used to lower the figures to those used in the judgment. Exhibits 11 and 12 reflected the applicable credits for the retirement pay that Wife had already received. Exhibit 13 set forth the total amount of Husband's retirement pay due Wife for the period ending July 31, 2010 ($87,942.66), the amount already paid ($17,822.34), and the amount still owing ($70,120.32).

Husband's motion for rehearing was followed by a "Motion Under [Rule 130.13(a)] for Rehearing Before a Circuit Judge" and a "Supplementary Motion Under [Rule 130.13(a)] for Rehearing Before a Circuit Judge" filed June 9, 2011 (collectively, "the motions for rehearing"). The trial court denied the "Motion for Rehearing" [11] on June 29, 2011, and Husband filed a "Motion for New Trial Pursuant to Civil Rules 78.04, 78.05 and Alternative Motion Pursuant to [Rule 75.01] to Vacate, Amend, or Modify the Judgment with Supporting Affidavits and Exhibits" on June 30, 2011. This motion was subsequently deemed overruled by the passage of time under Rule 78.06, and Husband's notice of

appeal was thereafter timely filed on October 7, 2011.

## Analysis

▇▇▇▇ We must first wrestle with difficulties caused by Husband's failure to comply with the briefing requirements of Rule 84.04. Except for his definition of abuse of discretion in relation to his sub-point D, Husband does not identify "a concise statement of the applicable standard of review for each claim of error" as required by Rule 84.04(e). "The standard of review is an essential portion of all appellate arguments; it outlines this court's role in disposing of the matter before us." *Waller v. Shippey*, 251 S.W.3d 403, 406 (Mo.App. W.D.2008). "Failure to comply with the rules of appellate procedure constitutes grounds for dismissal." *Snyder v. Snyder*, 142 S.W.3d 780, 782 (Mo.App. E.D.2004).

▇▇▇ Husband's single point is multifarious in that it makes at least five separate allegations of trial court error supported by at least five distinct legal reasons set forth in lettered sub-points.[12] "Points containing multifarious allegations of error do not comply with Rule 84.04." *Atkins v. McPhetridge*, 213 S.W.3d 116, 120 (Mo. App. S.D.2006). Specifically, Rule 84.04(d)(1)(A) requires that "each point" "identify the trial court ruling or action that the appellant challenges[.]" Combining "disparate contentions of error into a single point relied on" runs afoul of this rule and generally preserves nothing for review. *Atkins*, 213 S.W.3d at 120. However, in such situations, we may exercise our discretion to consider some or all por-

---

11. Like the docket entry referenced in footnote 10, this docket entry did not specifically address a supplementary motion, and Husband has not asserted any error based on the trial court's failure to do so.

12. The allegation concerning error in the dismissal of Husband's motions refers to at least three different motions, and sub-point B states that Husband was not provided three things: a summons, notice of right to counsel, and notice of right to file responsive pleadings for purposes of Rules 54.01, 54.02, and 54.04.

tions of the multifarious point. *Id.* [Wife] has not requested that we dismiss Husband's appeal on the basis of his briefing errors, and we will exercise our discretion to review Husband's error claims *ex gratia* by analyzing the five sub-points presented in his brief. *See Citizens for Ground Water Prot. v. Porter,* 275 S.W.3d 329, 347 n. 6 (Mo.App. S.D.2008).

### Sub-point A—Service of the Foreign Judgment

■■■ In sub-point A, Husband contends he was not "served with a notice of the registration of [the] foreign judgment" as required by Rule 74.14(c) and section 511.760. Husband cites no authority for the proposition that Rule 74.14 and section 511.760 require any different procedure for the registration of a foreign judgment than that used in this case. Husband's failure to do so is especially significant in view of the controlling provisions of Rule 74.14(c). *See McMinn v. McMinn,* 884 S.W.2d 277, 278 (Mo.App. W.D.1994) ("Rule 74.14 supersedes all statutes and court rules inconsistent with it"). Instead, Husband makes an unsupported assertion that "[t]he bottom line is that [Husband] was never served with a notice of [the] foreign judgment" and that such failure denied him procedural due process under the United States and Missouri constitutions.

■■■ "An objection presented for the first time in a motion for a new trial is not timely[,]" *Koedding v. Kirkwood Contractors, Inc.,* 851 S.W.2d 122, 125 (Mo.App. E.D.1993), and "[a] constitutional question is waived unless raised in the trial court at the earliest opportunity." *Eisel v. Midwest BankCentre,* 230 S.W.3d 335, 340 (Mo. banc 2007). In his *pro se* letter to the trial court requesting a continuance of the contempt hearing, Husband indicated that he had "tried to comply and get this matter resolved outside the courtroom." He did not claim that his constitutional right to

due process was violated because he "was never served with a notice of [the] foreign judgment[.]" After Husband failed to attend the evidentiary hearing, his next letter to the trial court requested that it reconsider its anticipated findings; it did not assert any lack of due process resulting from a failure to be served with the foreign judgment. Husband waived his constitutional claim by failing to assert it at the earliest possible opportunity. Sub-point A fails.

### Sub-point B—Summons and Advice of Rights Concerning Contempt Hearing

Husband contends in sub-point B that he was not served with a summons or advised that he had the right to have a lawyer and to file a response to Wife's contempt motion under Rules 54.01, 54.02, and 54.04.

■■■ The record indicates that these issues were first raised to the trial court in Husband's post-judgment motion for rehearing. As a result, we do not address Husband's claim that he had a right to a summons or that he had a right to file a responsive pleading to Wife's contempt motion because these alleged errors were not presented to the trial court in a timely manner. *Cf. Miller v. Robinson,* 844 S.W.2d 574, 576 and 578 (Mo.App. W.D. 1992) (mother "waived any objections to procedural matters" by not raising complaints concerning summons, notice, and the opportunity to be heard until her post-judgment motions). This portion of sub-point B fails.

■■■ Assuming the right to counsel has attached, a waiver of the right must be knowingly and intelligently made. *See State v. Hunter,* 840 S.W.2d 850, 857 (Mo. banc 1992); *State ex rel. Family Support Div.–Child Support Enforcement v. Lane,* 313 S.W.3d 182, 186 (Mo.App. W.D.2010).

But "[u]nless and until the trial court sought to impose a sentence of incarceration," there is no duty on behalf of the trial court to advise the alleged contemnor of his right to counsel and obtain a waiver of that right. *Cf. State v. Keeth,* 203 S.W.3d 718, 729 (Mo.App. S.D.2006).

Here, there was no indication that the trial court ever considered using jail time as a means of enforcing the foreign judgment. As a result, the trial court did not err by not notifying Husband of a right to counsel regarding Wife's civil motion for contempt. This portion of sub-point B also fails.

### Sub-point C—"Jurisdiction" to Order Attorney Fees

■ In his third sub-point, Husband contends the trial court "exceeded its jurisdiction" when it ordered Husband to pay Wife's attorney fees, accepted payment of same from Husband, and then distributed that payment to Wife "without order of the circuit court[.]" Husband argues that there was

> no record of any assignment of authority by an Administrative Judge of the Family Court … which would give the Family Court Commissioner jurisdiction to assess attorney's fees and order them held and thereafter disbursed at any time prior to the entry of a judgment by the Circuit Judge approving the Findings and Recommendations of the Judge of the Family Court.

Beyond noting that the functions and powers of a family court commissioner are set forth in Rule 130.04, Husband does not cite any authority for the proposition that such an assignment was required. More specifically, Husband alleges that the associate circuit judge

> ha[d] the authority to order disbursement, not the Family Court Commissioner. The Family Court, in this instance, was judge, jury and executioner.

All without approval of the Circuit Court as mandated by Civil Rule[s] 130.04, 130.07, 130.08 and 130.09.

We disagree with both Husband's error claim and its attendant hyperbole.

■ The trial court has the inherent power to order attorney fees in a civil contempt case. *Bruns v. Bruns,* 186 S.W.3d 449, 452–53 (Mo.App. W.D.2006). Further, "[a] trial court's award of attorney's fees in a civil contempt action will be reversed only when the trial court has abused its discretion." *Id.* at 453. We first note that while the family court commissioner did verbally announce an award of attorney fees at the conclusion of the contempt hearing, that award was not formally ordered until the associate circuit judge did so in a signed, July 26, 2010 docket entry. And although Husband paid the ordered attorney fees before the trial court entered its judgment (which contained the attorney fee award and gave Husband a credit for his prior payment), both the initial order and subsequent judgment were issued by a judge, not by a family court commissioner.

■ In any event, even if the order had been issued by a commissioner instead of a judge, Husband does not explain why such an order was not interlocutory and thereby subject to change in the trial court's final judgment. "Temporary orders, which by their nature expire and are superseded by a subsequent judgment on the merits, generally are not subject to review, either by interlocutory appeal or couched in an appeal of the final judgment as [the appellant] attempts here." *In re Smith,* 351 S.W.3d 25, 27 (Mo.App. S.D. 2011); *see also Saeuberlich v. Saeuberlich,* 782 S.W.2d 78, 81 (Mo.App. E.D.1989) (temporary order pending final judgment is not appealable). Sub-point C is denied.

### Sub-point D—Refusal to Allow Pleadings Out of Time

■ Fourth, Husband asserts the trial court abused its discretion in denying his motion to file pleadings out of time after he "obtained counsel on May 3, 2011, who promptly filed a motion for leave to file responsive pleadings to [Wife's] motion for contempt and order to show cause and [Husband's] reply to [the contempt motion]." [13]

■ Husband does not identify the applicable time period, if any, during which a party is entitled to file a responsive pleading to a motion for civil contempt as a matter of right, let alone cite any authority for the proposition that any such period extends beyond the date of the evidentiary hearing on the motion. Rule 44.01(b) generally permits a trial court discretion to enlarge the time for an act that is required or permitted to be done, but when the applicable period permitted for a responsive pleading has expired, the movant must show that his "failure to act was the result of excusable neglect" to be entitled to file a pleading out of time. "We review the trial court's ruling denying [a party's motion for] leave to file a response out of time for abuse of discretion." *Inman v. St. Paul Fire & Marine Ins. Co.*, 347 S.W.3d 569, 575 (Mo.App. S.D.2011).

> On appeal the trial court will only be found to have abused its discretion if its ruling is clearly against the logic of the circumstances before the court. *State ex rel. Webster v. Lehndorff, Geneva*, 744 S.W.2d 801, 804 (Mo. banc 1988). The trial court's ruling must be so arbitrary and unreasonable as to shock the sense of justice and indicate that the court did not carefully consider the matter.

*Manor Square, Inc. v. Heartthrob of Kansas City, Inc.*, 854 S.W.2d 38, 42–43 (Mo. App. W.D.1993).

■ Here, Husband does not attempt to demonstrate the necessary excusable neglect; he simply points to the deficiencies he perceives in both the process used to register the foreign judgment and the manner in which he was provided with notice of Wife's contempt motion. Even if we were to assume, *arguendo*, that those processes were deficient in some manner, it would not satisfy Husband's burden to demonstrate excusable neglect in light of his actual knowledge of Wife's claims and the pending hearing date (which had been previously reset at his request). As for Husband's late retention of counsel, "[p]ro se litigants are held to the same standards as attorneys. Judicial impartiality, judicial economy, and fairness to all parties preclude courts from granting pro se litigants preferential treatment." *Pruett v. Pruett*, 280 S.W.3d 749, 751 (Mo.App. S.D.2009).

Retained counsel's May 2011 request to file a responsive pleading came after the close of evidence and after the expiration of the trial court's specific deadline (November 1, 2010) for the filing of any responses to its announced calculation of Wife's share of Husband's retirement pay. It also came approximately 15 months after Husband had submitted his first *pro se* letter in the case requesting a continuance of the contempt hearing. That letter did not deny Wife's allegation that she had not received her share of Husband's retire-

---

**13.** Husband's argument adds contentions that he was denied "a full hearing including, an opportunity for discovery," and states "[i]t is difficult to perceive how [Wife] would have been prejudiced had there been a full evidentiary hearing on the issues raised in the reply and other issues that may have been raised during discovery such as whether or not [Wife] was as indigent as she claims." Such issues were not included in this sub-point and are therefore not preserved for review. *See In re Marriage of Fritz*, 243 S.W.3d 484, 488 (Mo.App. E.D.2007).

ment pay as ordered; it stated instead that Husband had "tried to comply and get this matter resolved outside the courtroom." Additionally, Husband failed to appear for the July 2010 contempt hearing after it had been previously continued at his request. Husband did not inform the court about any inability to attend the evidentiary hearing prior to its occurrence, and he continued to correspond with the trial court afterward, asking the trial court to reconsider its announced rulings. Finally, Husband acquiesced in the attorney fee award by paying it into the registry of the court. It was not until after the trial court had announced its calculation of back retirement pay owed to Wife and had requested a proposed judgment from Wife's counsel that Husband finally retained an attorney for purposes of contesting Wife's contempt motion.

Under these circumstances, we cannot say that the trial court's decision to deny Husband's request to file a responsive pleading out of time was "so arbitrary and unreasonable as to shock the sense of justice and indicate that the court did not carefully consider the matter." *Manor Square, Inc.*, 854 S.W.2d at 43. Sub-point D is denied.

### Sub-point E—"Jurisdiction" to Calculate Arrearages

■ Husband's final sub-point contends the trial court "exceeded its jurisdiction by modifying the [original decree] ... because [it] recalculated arrearages based upon factors not allowable under the original [decree]," citing Texas Family Code section 9.007. Husband argues that "while the [trial c]ourt accepted the precise formula contained in the [original decree] for the division of the retirement [pay,]" it received "a plethora of extrinsic evidence which was contrary to [the] formula and" made a calculation contrary to that determined "by the Defense Finance and Accounting Service[.]" Assuming, *arguendo*,

that Texas law would prohibit any such "recalculat[ion of] arrearages," Father, as the appellant, has the burden of proving that such an error occurred. *See Grider*, 325 S.W.3d at 440.

■ As evidence demonstrating the alleged error, Husband cites "Exhibit 4 and DD Form 2293, Exhibit 3[.]" Exhibit 3 is described in the transcript as Wife's "application to receive benefits[,]" and Exhibit 4 is described as "a letter [Wife] received in response to Exhibit 3[.]" Although Husband asserts that these exhibits (which were admitted into evidence at the contempt hearing) prove his error claim, Husband did not include them in the record on appeal. "When an exhibit is not deposited with this Court, 'the intendment and content of the exhibits [will be] taken as favorable to the trial court's ruling and as unfavorable to the appellant.'" *Briar Rd., L.L.C. v. Lezah Stenger Homes, Inc.*, 321 S.W.3d 488, 492–93 (Mo.App. S.D.2010) (quoting *Brown v. Brown,* 14 S.W.3d 704, 708 n. 5 (Mo.App. S.D.2000)). We therefore presume that exhibits 3 and 4 would not support Husband's claim.

Husband also challenges the "hand-written" notations on the judgment's incorporated exhibits 9 and 11. Husband claims that "[t]here are no other documents which show what the actual net pay of [Husband] is, and there are no other exhibits which show what that net pay is as a Major. Instead, the [trial c]ourt has put in calculations without reference to any other exhibits or records." Exhibits 9 through 13 were amended by the trial court and incorporated into its judgment. The judgment specifically refers to the trial court's receipt of "information and a chart which includes information and calculates amounts which [Husband] believes should be considered in calculating the amount of military retirement due, and past due, and payable to [Wife]." The judgment states

that the trial court considered "those exhibits and information submitted to the Court by [Husband.]" The docket also indicates that the trial court received "documents and [a] letter from [Husband]" and that Husband's "chart" was used by the trial court in its calculation of the amount due Wife.

After considering the aforementioned evidence provided by Husband, the trial court calculated an arrearage amount that was $15,199.63 lower than the figure being advocated by Wife. It also found that the percentage of Husband's current retirement pay should be 25%, reflecting a downward adjustment from Husband's retirement pay based solely upon the rank of lieutenant colonel. None of these materials are contained in the record on appeal.

"The trial court's judgment is presumed correct[.]" *Grider*, 325 S.W.3d at 440. Husband's failure to deposit with this court the "exhibits and information" presented to the trial court is fatal to his attempt to overcome that presumption. *See Briar Rd., L.L.C.*, 321 S.W.3d at 492–93 (we presume that omitted materials would not support the appellant's claim of error). Husband's final sub-point is also denied, and the judgment of the trial court is affirmed.

DANIEL E. SCOTT, P.J. and MARY W. SHEFFIELD, JJ., concur.